1   Marc A. Karish (State Bar No. 205440)
    A. Eric Bjorgum (State Bar No. 198392)
2   KARISH & BJORGUM, PC
    119 E. Union Street, Suite B
3   Pasadena, California  91103
    Telephone: (213) 785-8070
4   Facsimile: (213) 995-5010
    E-Mail: marc.karish@kb-ip.com
5
6   Attorneys for Defendants/Counterclaimants
    ARKON RESOURCES, INC.
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11  NATIONAL PRODUCTS, INC., a          ) Case No.: 18-cv-02936 AG (SSx)
    Washington corporation,             )
12                                      ) **DEFENDANT ARKON**
               Plaintiff,               ) **RESOURCES, INC.'S NOTICE OF**
13                                      ) **MOTION AND MOTION FOR**
         v.                             ) **SUMMARY JUDGMENT**
14                                      )
    ARKON RESOURCES, INC., a            ) **[DECLARATION OF MARC**
15  California corporation,             ) **KARISH, DECLARATION OF**
                                        ) **PAUL  BRASSARD,**
16             Defendant.               ) **DECLARATION OF GREG**
                                        ) **BRYANT FILED**
17  ─────────────────────────          ) **CONCURRENTLY;  PROPOSED**
    ARKON RESOURCES, INC., a            ) **JUDGMENT AND STATEMENT**
18  California corporation,             ) **OF UNCONTROVERTED FACTS**
                                        ) **AND CONCLUSIONS OF LAW**
19             Counterclaimant,         ) **LODGED CONCURRENTLY]**
                                        )
20        v.                            ) **Date: December 17, 2018**
                                        ) **Time: 10:00 a.m.**
21  NATIONAL PRODUCTS, INC., a          ) **Place:   Courtroom 10D**
    California corporation,             ) **Judge:  Hon. Andrew J. Guilford**
22             Counterdefendant.        ) **U.S. District Court Judge**
23                                      )
                                        ) **Discovery Cut-off: July 20, 2018**
24                                      ) **Pretrial Conference: February 11,**
                                        ) **2019**
25                                      ) **Trial Date: February 26, 2019**
26  ─────────────────────────          )
27
28

TO PLAINTIFF AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 17, 2018 at 10:00 a.m., or as soon thereafter as counsel may be heard in the above-entitled court, located at 411 West 4th Street, Courtroom 10D, Santa Ana, CA 92701-4516, Defendant Arkon Resources, Inc. ("Arkon") will, and hereby does move this Court for summary judgment.  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 16, 2018.

The grounds for this motion are that none of Defendant's products infringe any valid and properly construed claim of Plaintiff's U.S. Patent No. 6,585,212, that the asserted claims of U.S. Patent No. 6,585,212 are invalid, and that Plaintiff is not entitled to pre-filing damages because Plaintiff failed to mark its products in compliance with 35 U.S.C. §287.

This motion is supported by this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Statement of Uncontroverted Facts And Conclusions of Law, Declaration of Marc Karish, Declaration of Paul Brassard, Declaration of Greg Bryant and Proposed Order submitted herewith, such other matters of which this Court may take judicial notice, and such other oral and documentary evidence and argument as may be presented prior to or at the hearing of this motion.

Respectfully submitted,

KARISH & BJORGUM, PC

Date:  October 25, 2018          By:  _/Marc Karish/_____
                                         Marc Karish
                                         Attorneys for Defendant
                                         ARKON RESOURCES, INC.

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.   Introduction ...................................................................................................1

II.  The '212 Patent ............................................................................................3

    a.  Disclosure ...............................................................................................3

    b.  Asserted Independent Claims ................................................................3

III. Applicable Law ............................................................................................4

    a.  Summary Judgment Standards ...............................................................4

    b.  Standards For Determining Patent Infringement ...................................5

    c.  Standards for Determining Obviousness ...............................................5

    d.  Standard for Determining Invalidity for Indefiniteness .........................7

IV.  Argument .....................................................................................................7

    a.  Arkon's Roadvise Products Do Not Infringe .........................................7

        i.   Arkon's RoadVise Products Do Not Infringe Claim 21 .................7

            1.  The Roadvise Products Do Not Have A "Jaw Portion Extending At An Obtuse Angle From One End Of The Base Portion" ...................................................................................8

            2.  The Roadvise Products Do Not Have A Frame Member With Both A Device Mounting Surface And Clamp Mounting Surface .............................................................................................9

            3.  The RoadVise Products Do Not Have a "Clamp Mounting Surface Being Structured To Cooperate With the Mounting Structure Of The Clamping Mechanism" ............................... 10

        ii.  Arkon's Roadvise Products Do Not Infringe Claim 27 ...............12

    b.  Arkon's Mobile Grip 2 Products Do Not Infringe .................................12

        i.   Arkon's Mobile Grip 2 Products Do Not Infringe Claim 21 .........12

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

1.  The Mobile Grip 2 Products Do Not Have A Frame Member With Both Device And Clamp Mounting Surfaces ................. 13

2.  The Mobile Grip 2 Products Do Not Have A "Clamp Mounting Surface Being Structured To Cooperate With the Mounting Structure Of The Clamping Mechanism" ............... 13

3.  The MG2 Does Not Have A "Substantially Rigid Jaw Portion Extending At An Obtuse Angle." .............................. 14

4.  The MG2 Products Do Not Have "A Resilient Compressible Pad Fixed To A Surface Of The Jaw Portion" ........................ 14

ii.  Arkon's Mobile Grip 2 Products Do Not Infringe Claim 27 ........ 14

c.  Arkon's Slim Grip Products Do Not Infringe Any Asserted Claims Of .... The '212 Patent ........................................................................... 15

i.  Arkon's Slim Grip Products Do Not Infringe Claim 2 ................. 15

1.  The Slim Grip Products Have A Jaw Portion Extending At An Acute Angle Not An Obtuse Angle ................................... 15

2.  The Slim Grip Products Do Not Have A "Clamp Mounting Surface Being Structured To Cooperate With the Mounting Structure Of The Clamping Mechanism" .............................. 15

ii.  Arkon's Slim Grip Products Do Not Infringe Claim 27 ............... 17

d.  Arkon's Universal Tablet Holder Products Do Not Infringe Any Asserted Claims Of The '212 Patent ........................................... 17

i.  Arkon's Universal Tablet Holder Does Not Infringe Claim 21 .... 17

ii.  The Universal Tablet Holder Does Not Infringe Claim 27 .......... 18

e.  No Dependent Claims Are Infringed ................................................ 19

f.  The Asserted Claims Of The '212 Patent Are Invalid ........................... 19

i.  Claim 27 is Invalid As Indefinite ................................................ 19

g.  Claims 21, 23, 27 and 30 are Invalid As Obvious Over Wang et al. and Over Arkon's Own CM228 Products ............................................ 20

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

V.    Plaintiff Failed To Patent Mark And Is Not Entitled To Pre-Filing  Damages ...
        ...........................................................................................................25

CONCLUSION ..........................................................................................25

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*American Med. Sys. Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523 (Fed. Cir. 1993) ..................................................................................25

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1363 (Fed. Cir. 2018) ................................7

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)..................................................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ..................................................5

*DatCard Sys., Inc. v. PacsGear, Inc.*, 550 F. App'x 895 (Fed. Cir. 2014) ..................................................................................6, 7

*Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1277 (Fed.Cir. 2004) ...............................................................5

*Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332 (Fed. Cir. 2003) ....................20

*Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966) ...............................................6

*Group One Ltd. v. Hallmark Cards, Inc.,* 407 F.3d 1297, 1301 (Fed. Cir. 2005) ..................................................................................5

*Intervet Am. Inc. v. Kee-Vet Labs. Inc.*, 887 F.2d 1050 (Fed. Cir. 1989) ..................................................................................20

*Jansen v. Rexall Sundown, Inc.*, 342 F.3d 1329, 1334 (Fed.Cir. 2003) ...................5

*KSR Int'l Co. v. Teleflex, Inc.,* 550 U.S. 398, 421 (2007) ........................................6

*L.B. Plastics, Inc. v. Amerimax Home Prods., Inc.,* 499 F.3d 1303, 1308-10 (Fed.Cir. 2007) ......................................................5

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.,* 324 F.3d 1308, 1318 (Fed. Cir. 2003)...............................................................5

*Maxwell v. J. Baker Inc.*, 86 F.3d 1098 (Fed. Cir. 1996) ........................................25

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (2011) ............................6

*Mintz v. Dietz,* 679 F.3d 1372, 1377 (Fed. Cir. 2012) ..............................................6

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124
    (2014) ......................................................................................................7, 19

*Nazomi Communications Inc. v. ARM Holdings PLC*, 403 F.3d 1364,
    1367-68 (Fed. Cir. 2005) .....................................................................................5

*Nike v. Wolverine World Wide Inc.*, 43 F.3d at 644, 646 (Fed. Cir.
    1994) ......................................................................................................5

*Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1344 (Fed.
    Cir. 2013) ......................................................................................................6

*V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed.
    Cir. 2005) ......................................................................................................5

*Whapeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 &
    n.9 (Fed. Cir. 1989)....................................................................................5, 19

*Wisconsin Alumni Research Found. v. Apple, Inc.*, 135 F. Supp. 3d
    865, 874–75 (W.D. Wis. 2015)........................................................................21

**Statutes**

35 U.S.C. §287(a) ........................................................................... 1, 3, 25

**Other Authorities**

Fed.R.Civ.P. 56(e)........................................................................................5

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.**   <u>**Introduction**</u>

This case involves holders for electronic devices such as cell phones. Plaintiff holds an aging patent for such technology, and it brings suit against Defendant years after learning of Defendant's product.  Defendant now files this motion for summary judgment because the accused products lack several claimed features of the patent-in-suit. Moreover, summary judgment of invalidity of the asserted claims of U.S. Patent No. 6,855,212 ("the '212 Patent") should be granted. Finally, if the Court declines to grant summary judgment of non-infringement or invalidity, then the Court should order that pre-filing damages are unavailable because Plaintiff National Products, Inc. ("NPI") failed to mark its products in compliance with 35 U.S.C. §287.

In general, portable electronic device holders were well known in the art prior to the '212 Patent.  NPI itself sold a spring-loaded cell phone cradle very similar to the accused products back in 1994, over 7 years before applying for the '212 Patent, but it did not disclose this product to the U.S. Patent and Trademark Office ("USPTO"). NPI is essentially trying to ignore claim limitations and argue that any spring-loaded device with inclined arms infringes its patent.

Plaintiff has alleged infringement of independent claims 21 and 27, and dependent claims 23 and 30.[1] Regarding claims 21 and 27[2], none of the accused Arkon products have "a substantially rigid [elongated] jaw portion extending at an obtuse angle from one end of the [elongated] base portion" or a frame member including both "a device mounting surface positioned relative to the first direction and a clamp mounting surface formed relative to the device mounting surface, the clamp mounting surface being structured to cooperate with the mounting structure

---

[1] Initially, Plaintiff also alleged infringement of claims 1-13, but dropped those claims and substantially altered its infringement allegations after the Court's claim construction Order.

[2] The bracketed portions are additional elements from claim 27.

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

of the clamping mechanism for positioning the resilient compressible pad spaced away from and inclined toward the device mounting surface."[3][4] In short, this is a clear case of non-infringement.  Because Arkon's products fail to meet all of the limitations of any of the asserted independent claims of the '212 Patent, Summary Judgment of Non-Infringement is warranted.

Additionally, Arkon submits that claim 27 is invalid as indefinite in requiring "[a] clamping mechanism, comprising: a substantially rigid, elongated base portion including structure for mounting on an external member."  The Court agreed that "structure for mounting on an external member" is "structure for mounting the base portion of the clamping mechanism on an external member."  Claim 27 is in its entirety directed to "a clamping mechanism" including first and second frame members.  The application only describes a base portion mountable on a frame member, not on something external to a frame member.  As will be explained below, Plaintiff's counsel, themselves patent attorneys with technical backgrounds, initially argued that the "base portion" was a completely different structure, thus compelling a conclusion that the claim is indefinite.

Additionally, Arkon submits that all of the asserted claims are obvious over U.S. Patent No. 5,305,381 to Wang and Arkon's own CM228 Products.  Wang clearly shows a spring-loaded device holder with inclined arms with pads.  Likewise, the Arkon CM228 Products were spring-loaded device holders with inclined, horizontally adjustable arms with pads.  The only issue is whether it would have been obvious to modify the arms of Wang or the CM228 Product to be vertically adjustable, or to have different angles, both of which were well known.  Because these elements were in existence at the time, and it would be routine for one of skill in the art to combine these elements for predictable results, the claims

---

[3] The bracketed portions are additional elements from claim 27.

[4] These and additional bases for non-infringement are explained below.  While Defendant addresses several dispositive missing claim elements in this motion, additional elements are also missing from the accused products and Defendant reserves all arguments for trial.

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

1  of the '212 Patent are obvious.

2  Although the Wang patent was subject to a petition for *Inter Partes* Review,

3  review was denied on a narrow ground. The USPTO never considered whether it

4  would be obvious to modify Wang to have such a structure and the decision of the

5  USPTO is not binding on this Court.

6  Finally, pre-filing damages are not available to NPI, because NPI failed to

7  properly mark its products in accordance 35 U.S.C. §287(a) and failed to provide

8  any actual notice to Arkon prior to filing of the complaint.

9  **II.    The '212 Patent**

10  **a.  Disclosure**

11  The '212 Patent discloses a "Quick Release Electronics Platform" with

12  certain essential components, most of which are shown in Figures 2, 3A and 3D

13  reproduced below.  Namely, first and second frame members/body portions (12,

14  20) are slidably connected, mechanically coupled, and biased toward each other by

15  a spring (54).  The frame members include a device mounting surface (18, 22) and

16  a clamp mounting surface (56, 58). The first frame member (12) has tracks (14a,

17  14b) and the second frame member (20) has slides (24a, 24b) to engage the tracks.

18  Clamp members (26) are attached to the frame members on clamp mounting

19  surfaces (56, 58). Each clamp member has a base portion (64) for mounting on a

20  frame member. The base portion (64) is connected to a curve (70) or bend (86) of a

21  jaw portion (68). The jaw portion (68), has a straight portion (72) positioned at a

22  specific obtuse angle (74) from the base portion (64). (Karish Dec., Exh. A.)



*Fig. 2.*                    *Fig. 3A.*          *Fig. 3D.*

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges infringement of claims 21, 23, 27 and 30 of the '212 Patent of which claims 21 and 27 are independent. (SUF, 1.)[5] Claim 21 is recited below, with the limitations relevant to this motion italicized:[6]

> 21. A mounting device, comprising:
>
> a clamping mechanism, comprising:
>
> > *a substantially rigid base portion including a mounting structure for mounting on an external member,*
> >
> > *a substantially rigid jaw portion extending at an obtuse angle from one end of the base portion*, and
> >
> > *a resilient compressible pad fixed to a surface of the jaw portion positioned on an interior of the obtuse angle*;
>
> first and second frame members slidably interconnected for relative motion along a first direction, *one of the first and second frame members including a device mounting surface positioned relative to the first direction and a clamp mounting surface formed relative to the device mounting surface, the clamp mounting surface being structured to cooperate with the mounting structure of the clamping mechanism for positioning the resilient compressible pad spaced away from and inclined toward the device mounting surface*;
>
> and a biasing member mechanically coupled between the first and second frame members for biasing the first and second frame members together along the first direction.

## III.   **Applicable Law**

### a.  **Summary Judgment Standards**

---

[5] Plaintiff initially asserted numerous other claims of the '212 Patent, including claims 1-13 and 33, but withdrew those claims after the Court's claim construction Order.

[6] As explained below, claim 27 is similar to claim 21 except that the entire claim is directed to a "clamping mechanism" and the base and jaw portions are "elongated."

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

Determination by summary judgment is particularly appropriate in patent infringement cases. *See e.g., L.B. Plastics, Inc. v. Amerimax Home Prods., Inc.,* 499 F.3d 1303, 1308-10 (Fed.Cir. 2007); *Nike v. Wolverine World Wide*, 43 F.3d 644, 646 (Fed. Cir. 1994). To defeat a supported motion for summary judgment, the non-movant must do more than merely raise a "'theoretical possibility' or 'metaphysical doubt'" as to the material facts. *Dynacore Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1277 (Fed.Cir. 2004). Rather, the non-movant must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### b. **Standards For Determining Patent Infringement**

The infringement inquiry involves a two-step analysis: (1) the court first determines the scope and meaning of the claim terms; then, (2) the construed claims are compared to the accused device. *Nazomi Communications Inc. v. ARM Holdings PLC*, 403 F.3d 1364, 1367-68 (Fed. Cir. 2005). For literal infringement to be found, the accused product must contain each and every limitation of the asserted claim. *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005). The absence of any one limitation in the accused device requires a finding of no infringement. *Id.* at 1312. The patentee bears the burden of proving infringement by a preponderance of the evidence. *Group One Ltd. v. Hallmark Cards, Inc.,* 407 F.3d 1297, 1301 (Fed. Cir. 2005).  If the independent claim is not infringed, neither are any of the dependent claims.  *Whapeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989).

### c. **Standards for Determining Obviousness**

A patent may be shown to be invalid if it is obvious; obviousness is shown by clear and convincing evidence. The standard for invalidity may be easier to meet if a material reference is not before the USPTO, though the standard does not technically change. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (2011). The Supreme Court's decision in *KSR Int'l Co. v. Teleflex, Inc.* clarified

1   the analysis of obviousness in a way that may make this defense appropriate for

2   summary judgment. 550 U.S. 398 (2007). Obviousness is a question of law that is

3   evaluated according to the level of skill in the art at the time the invention was

4   made, the scope and content of the prior art, and the differences between the prior

5   art and the asserted claim. *Id.* at 406 (quoting *Graham v. John Deere Co.*, 383 U.S.

6   1, 17–18 (1966)). These "*Graham* factors" also include secondary indicia that may

7   demonstrate that the claimed invention was nonobvious. *Graham*, 383 U.S. at 17–

8   18. However, evidence of secondary indicia are frequently inadequate to establish

9   nonobviousness where either (1) the patentee fails to show the requisite nexus

10  between the secondary indicia and the patent, or (2) the "claimed invention

11  represents no more than the predictable use of prior art elements according to

12  established functions." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333,

13  1344 (Fed. Cir. 2013). In *KSR*, the Court illustrated the application of the *Graham*

14  factors, explaining that:

15          When there is a design need or market pressure to solve a problem and there

16          are a finite number of identified, predictable solutions, a person of ordinary

17          skill has good reason to pursue the known options within his or her technical

18          grasp. If this leads to the anticipated success, it is likely the product not of

19          innovation but of ordinary skill and common sense. *KSR*, 550 U.S. at 421.

20          Moreover, "most inventions that are obvious were also obvious to try." *Id.*

21          In addition, *KSR* made clear that an invention may be obvious if it is the

22  product of "common sense," 550 U.S. at 421. In *Mintz v. Dietz,* the Federal Circuit

23  explained that "'common sense' is a shorthand label for knowledge so basic that it

24  certainly lies within the skill set of an ordinary artisan." 679 F.3d 1372, 1377 (Fed.

25  Cir. 2012). The court subsequently affirmed a district court's finding of invalidity

26  based on "common sense" in *DatCard Sys., Inc. v. PacsGear, Inc.*, even though

27  some limitations were "not clearly present" in the prior art (but were "highly

28  *suggested*"). No. 10-cv-1288-MRP, slip op. at 6 (C.D. Cal. Apr. 1, 2013) (*aff'd*

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

*DatCard Sys., Inc. v. PacsGear, Inc.*, 550 F. App'x 895 (Fed. Cir. 2014)). The claims were obvious because "[c]ommon sense can provide a reason to combine the teachings of the various references *and* to supply the missing pieces." *Id*.

Finally, *KSR* makes clear that conflicting expert testimony about the legal conclusions to be drawn from the underlying facts cannot defeat summary judgment. *KSR*, 550 U.S. at 426. As a question of law, the ultimate conclusion of obviousness or nonobviousness rests with the court. *Id*.

### d. Standard for Determining Invalidity for Indefiniteness

Invalidity can also be shown when a patent is indefinite.  In *Nautilus, Inc. v. Biosig Instruments, Inc.*, the Supreme Court held that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." 134 S. Ct. 2120, 2124 (2014). Subsequent Courts have agreed with that standard. See e.g. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1363 (Fed. Cir. 2018).

## IV. Argument

### a. Arkon's Roadvise Products Do Not Infringe

One allegedly infringing product is the Roadvise, which Arkon purchases from High Gear Specialties, Inc. ("HGS").[7]  (SUF, 2.) HGS obtained U.S. Patent Nos. 9,707,901 and 9,931,995, for the RoadVise product. (SUF, 3.) The '212 Patent was not cited by the U.S. Patent and Trademark Office ("USPTO") against either of those patents. (SUF, 4.) As seen below, that is because the structure of the RoadVise product is totally different than the '212 Patent.

#### i. Arkon's RoadVise Products Do Not Infringe Claim 21

##### 1. The RoadVise Does Not Have A "Jaw Portion Extending At An Obtuse Angle From One End Of The Base Portion"

---

[7] HGS filed its own Summary Judgment Motion (Middle District of FL, 6:18-cv-543, D.N. 68.)

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

The RoadVise products do not have a "jaw portion extending at an obtuse angle from one end of the base portion," because the jaw portion in the RoadVise product extends in a straight line (180 degrees) from the base portion with one curved surface. (SUF, 5, 6.) An infinite number of lines may be drawn tangential to the curve and the curve therefore does not meet the limitation of a jaw portion "extending at an obtuse angle." (Declaration of Greg Bryant ("Bryant Dec."), Exh. A at 25.)

In its claim construction Order the Court rejected Arkon's proposed construction of a "jaw portion" as "gripping part of a clamping member or a clamping mechanism including a straight portion having an axis and a portion with a curve or a bend connected between the straight portion and the base portion." However, the Court did not hold that a curved jaw surface extends at "an obtuse angle." (Dkt. 96 at pp. 25-26.) As shown in the specification and drawings, the curved neck portion and bent neck portion are not the portions from which the obtuse angle is measured. (Figs. 3A, 3D, col. 5, lines 15-34, col. 6, lines 25-32.) The '212 Patent does not teach or suggest a rounded portion for engaging with the device to be mounted.  The angle is measured from a straight portion which is not found in the RoadVise products.[8]

---

[8] Claim 21 further requires "a resilient compressible pad fixed to a surface of the jaw portion positioned on an interior of the obtuse angle."  This claim element confirms that there is a single obtuse angle which is not met by the rounded surface of the RoadVise products.

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

2. <u>The RoadVise Does Not Have A Frame Member With Both</u>
<u>A Device Mounting Surface And Clamp Mounting Surface</u>

Claim 21 further requires "one of the first and second frame members including a device mounting surface positioned relative to the first direction and a clamp mounting surface formed relative to the device mounting surface." As shown above, the '212 patent teaches two frame members 12, 20, each with a device mounting surface 18, 22 and a clamp mounting surface 56, 58. The Court held that the claims require "at least one of the first and the second frame members must include both a device mounting surface and a clamp mounting surface." (Dkt. 96 at p. 14.)  In view of this construction, NPI cannot show infringement.

The RoadVise product is configured very differently than the product claimed in the '212 patent in that it has a central pedestal with two independently suspended clamp members. (SUF, 7.) The central pedestal is the only frame member with a device mounting surface. (SUF, 8.) However, the central pedestal does not have a clamp mounting surface. Rather, the clamping mechanisms (arms) are mounted to different sets of rods.  (SUF, 9.)  The sets of rods are second and third frame members.  (Bryant Dec., Exh A at 27.) The rods do not have any device mounting surface. (SUF, 10.)  Thus, no frame member has both a device mounting surface and a clamp mounting surface.

NPI tried to dance around this problem in their infringement contentions by referring to one clamping mechanism <u>and set of rods</u> as a first structure namely "a clamping mechanism" and then referring to the other identical clamping mechanism as a "frame member". Declaration of Marc Karish ("Karish Dec."), Exh. E (Babcock Report, Exh. C at pp. 4, 13), Exh. F (Babcock Depo) at 88:16-89:12, 91:24-92:12 and 94:5-20.)  Where claim elements are listed separately, "the clear implication of the claim language" is that the elements are "distinct component[s]" of the patented invention. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co*., 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

1    any evidence to the contrary, we must presume that the use of . . . different terms in

2    the claims connotes different meanings.").

 

10    As shown in the '212 Patent, one of the frame members has slides 24a, 24b

11    and the other frame member has tracks 14a, 14b.  (Karish Dec., Exh. A, Fig. 2, col.

12    4, lines 1-30.) Notably, the specification points out that the slides and tracks may

13    be formed as "a conventional rod-and-tube structure".  The slides and tracks are

14    never identified as the clamping mechanism or mounting structure, but always part

15    of the frame members. Therefore, no frame member has both a device mounting

16    surface and a clamp mounting surface, so the RoadVise products do not infringe.

17    Moreover, the RoadVise products function differently than the claimed

18    invention because the three different frame members allow for independent

19    suspension. If the device taught in the '212 Patent is subjected to force against the

20    spring, one frame member may be pushed away from the other frame member,

21    thereby releasing the device.  In the RoadVise products, if the device is subjected

22    to an external force, both arms can independently move with the device to absorb

23    the force to maintain hold of the device. (Bryant Dec., Exh. A at 27.)

24        3.  <u>The RoadVise Products Do Not Have a "Clamp Mounting</u>

25           <u>Surface Being Structured To Cooperate With the Mounting</u>

26           <u>Structure Of The Clamping Mechanism"</u>

27    Claim 21 requires "the clamp mounting surface being structured to

28    cooperate with the mounting structure of the clamping mechanism for positioning

the resilient compressible pad spaced away from and inclined toward the device mounting surface." The Washington Court construed this limitation to mean the "clamp mounting surface acts together with the mounting surface of the clamping mechanism or clamping member so that the resilient compressible pad of the jaw portion is spaced away from and inclined towards the device mounting surface." (Dkt. 96 at pp. 31-34.) In reaching its construction, the Court noted that the clamp mounting surface needs to directly cooperate with the mounting surface of the clamping mechanism and noted that the '212 Patent specification specifically teaches two structures formed with "cooperating anti-slippage structures" that may be made up of "a grooved, a knurled, a diamond, a 21 serrated, a slotted, and a roughened surface area." (Patent at 10:45-47, 10:50-52)." *Id.* Moreover, as made clear in the patent, the need for surfaces that cooperate is in embodiments where the clamp members are vertically adjustable relative to the frame members. See col. 5, line 15-39 for an embodiment where "devices having base portions of different thicknesses are easily accommodated, without adjustments in the positions of the clamp member 26 relative to the device mounting surfaces" and then col. 6, lines 4-24 and Fig. 3E describing surfaces structured to cooperate to allow for adjustment "whereby the jaw portion 68 is spaced further away from or closer to the first and second device mounting surfaces."

In the RoadVise products, the two clamp mechanisms are attached to rods in a fixed manner and cannot be adjusted. (SUF, 11.) The position of the thin rubber sheet is determined by the shape of the clamp mechanism and not by any interaction between the frame member and the arm. (SUF, 12.) Accordingly, there is no frame member with a clamp mounting surface "structured to cooperate with the  mounting structure of the clamping mechanism for positioning the resilient compressible pad spaced away from and inclined toward the device mounting surface." NPI is arguing that any arm fixedly attached to a frame member still meets the claim limitations. Again this is an untenable position because it is

1   contrary to the plain meaning of the claim language and, as explained below,

2   would render those claims invalid over the prior art (particularly U.S. Patent No.

3   5,305,381 to Wang which teaches inclined arms whose shape and position is

4   determined by the shape of the arm, not interaction with a frame member).

5                **ii.   Arkon's RoadVise Products Do Not Infringe Claim 27**

6           With regard to claim 27, the claim limitations are largely the same as claim

7   21, and the same non-infringement arguments apply.  However, claim 27 also

8   requires "elongated" base portions and jaw portions.  While NPI's infringement

9   contentions fail on claim 27 for the same reasons as with claim 21, they also fail

10  because the RoadVise does not have an elongated base portion.  The base portions

11  have a substantially similar length and width. (SUF, 13.) As a result, this provides

12  yet another basis to find that the RoadVise product does not infringe claim 27.

13          **b.  Arkon's Mobile Grip 2 Products Do Not Infringe**

14               **i.   Arkon's Mobile Grip 2 Products Do Not Infringe Claim 21**

15

16

17    

18

19

20

21

22          Unlike the clamping mechanisms of the '212 Patent which are adjustably

23  attached to frame members, the arms of the Mobile Grip 2 ("MG2") are integrally

24  formed with the frame members as unitary, non-adjustable structures. (SUF, 15.)

25  As seen above, each arm has a perpendicular core (shown outlined in green) with a

26  rubber overmold. (SUF, 16.) NPI argues that the rubber overmold is the entire

27  clamping arm (including the base portion and the jaw portion) and that the

28  perpendicular core is part of a frame member. This is untenable in view of the

1   plain meaning of the language and the prior art.

2                  1.   The Mobile Grip 2 Products Do Not Have A Frame Member

3                       With Both Device And Clamp Mounting Surfaces

4         Claim 21 requires "one of the first and second frame members including a

5   device mounting surface positioned relative to the first direction and a clamp

6   mounting surface formed relative to the device mounting surface." As explained

7   above, this requires that "at least one of the first and the second frame members

8   must include both a device mounting surface and a clamp mounting surface." The

9   MG2 products do not meet this limitation. The MG2 product arms are not mounted

10  to the frame members (but rather formed as unitary and non-adjustable structures)

11  and there is therefore no clamp mounting surface on the frame members.

12                 2.   The Mobile Grip 2 Products Do Not Have A "Clamp

13                      Mounting Surface Being Structured To Cooperate With the

14                      Mounting Structure Of The Clamping Mechanism"

15        Claim 21 requires "the clamp mounting surface being structured to

16  cooperate with the mounting structure of the clamping mechanism for positioning

17  the resilient compressible pad spaced away from and inclined toward the device

18  mounting surface." As explained above, this limitation means the "clamp mounting

19  surface acts together with the mounting surface of the clamping mechanism or

20  clamping member so that the resilient compressible pad of the jaw portion is

21  spaced away from and inclined towards the device mounting surface." The Mobile

22  Grip 2 products do not meet this limitation.

23        NPI argues that the surfaces where the rubber overmold meets the

24  perpendicular core constitute a clamp mounting surface that cooperates with

25  mounting structure of the clamping mechanism.  Again, the arms of the Mobile

26  Grip 2 products are completely non-adjustable. (SUF, 15.) Thus, there is no

27  cooperation between the surfaces, and the position of the arm is solely determined

28  by the shape of the arm itself.  (Bryant Dec., Exh. A at 40.) Also, the core extends

from the device mounting surface and is therefore not "spaced away from" it. (SUF, 17.) Indeed, as explained below, the prior art Wang reference and the prior art Arkon products are closer to the '212 patent than the Mobile Grip 2 Products.

### 3. The MG2 Does Not Have A "Substantially Rigid Jaw Portion Extending At An Obtuse Angle."

The Mobile Grip 2 products do not have a "substantially rigid jaw portion extending at an obtuse angle from one end of the base portion." As shown above, the clamping mechanisms (arms) are perpendicular to the device mounting surface and not inclined toward it. Additionally, the rubber overmold is flexible, can be bent with little finger pressure and is not "substantially rigid." (SUF, 18.)

### 4. The MG2 Products Do Not Have "A Resilient Compressible Pad Fixed To A Surface Of The Jaw Portion"

Claim 21 further requires "a resilient compressible pad fixed to a surface of the jaw portion positioned on an interior of the obtuse angle." The Mobile Grip 2 products do not have "a reslient compressible pad fixed to a surface of the jaw portion". NPI tries to read out the limitation that a "compressble pad" is "fixed to the surface of the jaw portion" in arguing that ribs in the rubber overmold are a "resilient compressible pad." The ribs formed in the rubber overmold are substantially incompressible and integral with the rubber overmold which is itself attached to a structure that is not at an obtuse angle." (Bryant Dec, Exh. A at 39.)

### ii. Arkon's Mobile Grip 2 Products Do Not Infringe Claim 27

As explained above regarding the RoadVise products, the limitations of claim 27 are largely the same as claim 21 except for "elongated" base portions and jaw portions. While NPI's infringement contentions fail on claim 27 for the same reasons as with claim 21, they also fail because the Mobile Grip 2 products have neither an elongated base nor an elongated jaw portion. Both the components have a similar lengths and widths, establishing neither to be "elongated." (SUF, 19.) As

a result, this is another basis to find that the Mobile Grip 2 product does not infringe claim 27.

    **c.**  **Arkon's Slim Grip Products Do Not Infringe Any Asserted Claims Of The '212 Patent**

        **i.**  **Arkon's Slim Grip Products Do Not Infringe Claim 21**



      **1.**  The Slim Grip Products Have A Jaw Portion Extending At An Acute Angle Not An Obtuse Angle

Claim 21 requires a "jaw portion extending at an obtuse angle from one end of the base portion."  The Slim Grip products do not meet this limitation.  The Washington Court held that this limitation required a "jaw portion extending at an angle greater than 90 degrees and less than 180 degrees from one end of the base portion." The jaw portion extends at a less-than-90 degree angle from the base portion. (SUF, 23.)

Notably, the Slim Grip jaw portion is very similar to the jaw portion taught by the prior art Wang patent (U.S. Patent No. 5,305,381).  The only difference is that it is not clear how the Wang arm 4 attaches to the frame 20.  However, it is inherently obvious to simply divide a known structure into two pieces. Moreover, as explained below, Arkon's own prior art products taught arms that were removably mounted to frame members with a very similar tongue and groove structure.

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT





Wang Patent, Fig. 4                    Slim Grip Product

    2.  <u>The Slim Grip Products Do Not Have A "Clamp Mounting</u>
<u>Surface Being Structured To Cooperate With the Mounting</u>
<u>Structure Of The Clamping Mechanism"</u>

Claim 21 further requires "a clamp mounting surface formed relative to the device mounting surface, the clamp mounting surface being structured to cooperate with the mounting structure of the clamping mechanism for positioning the resilient compressible pad spaced away from and inclined toward the device mounting surface." As explained above, this limitation means the "clamp mounting surface acts together with the mounting surface of the clamping mechanism or clamping member so that the resilient compressible pad of the jaw portion is spaced away from and inclined towards the device mounting surface."

The Slim Grip products have a clamp mounting surface. However, the Slim Grip products do not have a "resilient compressible pad spaced away from and inclined toward the device mounting surface" as claimed. The jaw portion is not spaced away from the device mounting surface, but rather is adjacent to it. (SUF, 22.) Moreover, the clamp arms are not vertically adjustable. (SUF, 21.) Therefore, the clamp mounting surface does not cooperate with the mounting structure of the clamping mechanism for positioning the pad spaced away from and inclined toward the device mounting surface. The position of the pad is unchangeable and determined by the shape of the arm, not by any interaction between the arm and the frame member. (Bryant Dec., Exh. A at 51.)

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

1

ii. **Arkon's Slim Grip Products Do Not Infringe Claim 27**

2  With regard to claim 27, the claim limitations are largely the same as claim

3 21 and the same non-infringement arguments apply.  However, claim 27 requires

4 "a substantially rigid, elongated base portion including structure for mounting on

5 an external member."  The Slim Grip product clamping members have a base

6 portion for mounting on a frame member -- not on an "external member."  The

7 Slim Grip base portion is not elongated because it has substantially the same length

8 and width. (SUF, 23.) This provides additional bases to find that the Slip Grip

9 products do not infringe claim 27.

10  d. **Arkon's Universal Tablet Holder Products Do Not Infringe Any**

11    **Asserted Claims Of The '212 Patent**

12    i. **Arkon's Universal Tablet Holder Does Not Infringe Claim 21**

13



14

15

16

17

18

19  The Universal Tablet Holder products are very similar to the Slim Grip

20 products and do not infringe for the same reasons. Moreover, Plaintiff's inventor

21 was aware of this product for over 4 years prior to bringing suit but infringement

22 hadn't crossed his mind. (SUF, 26.)

23    1. The Universal Tablet Holder Products Have A Jaw Portion

24      Extending At An Acute Angle Not An Obtuse Angle

25  Claim 21 requires a "jaw portion extending at an obtuse angle from one end

26 of the base portion." The Washington Court held that this limitation required a

27 "jaw portion extending at an angle greater than 90 degrees and less than 180

28 degrees from one end of the base portion." The jaw portion extends at a less than

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

90 degree angle from the base portion. (SUF, 28.) Again, the Universal Tablet

Holder clamp mechanisms are nearly identical to the clamp mechanisms taught by

the prior art Wang patent (U.S. Patent No. 5,305,381).





Wang Patent, Fig. 4                Universal Tablet Mount Product

> 2. <u>The Universal Tablet Holder Products Do Not Have A
> "Clamp Mounting Surface Being Structured To Cooperate
> With the Mounting Structure Of The Clamping Mechanism"</u>

Claim 21 further requires a "clamp mounting surface being structured to

cooperate with the mounting structure of the clamping mechanism for positioning

the resilient compressible pad spaced away from and inclined toward the device

mounting surface." The Universal Tablet Holder products have a clamp mounting

surface. However, the clamp arms are not vertically adjustable. (SUF, 27.)

Therefore, the clamp mounting surface does not cooperate with the mounting

structure of the clamping mechanism for positioning the pad. The position of the

pad is determined by the shape of the arm, not by any interaction between the arm

and the frame member. (Bryant Dec., Exh. A at 61.)

## ii. <u>The Universal Tablet Holder Does Not Infringe Claim 27</u>

With regard to claim 27, the claim limitations are largely the same as claim

21 and the same non-infringement arguments apply.  Claim 27 further requires "an

elongated base portion including structure for mounting on an external member.

The Universal Tablet Holder clamping members have a base portion for mounting

on a frame member -- not on an "external member." Additionally, the base portion

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

of the Universal Tablet Holder is not "elongated", but rather has a similar length and width. (SUF, 29.) These are additional bases for non-infringement claim 27.

### e.  No Dependent Claims Are Infringed

As explained above, none of Arkon's products infringe independent claims 21 or 27 of the '212 Patent.  The remaining asserted claims, 23 and 30 depend from claims 21 and 27 respectively.  Because none of Arkon's products infringe claims 21 and 27, none Arkon's products infringe claims 23 and 30. *Whapeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 & n.9 (Fed. Cir. 1989).

### f.  The Asserted Claims of the '212 Patent Are Invalid

#### i.  Claim 27 is Invalid As Indefinite

Arkon submits that claim 27 is invalid as indefinite in requiring "[a] clamping mechanism, comprising: a substantially rigid, elongated base portion including structure for mounting on an external member."  The parties agreed that "structure for mounting on an external member" is "structure for mounting the base portion of the clamping mechanism on an external member."  Claim 27 is in its entirety directed to "a clamping mechanism" and the clamping mechanism includes first and second frame members.  The patent only describes a base portion mountable on a frame member, not on something external to the frame members.

Plaintiff's counsel initially argued the "base portion including structure for mounting on an external member" was a completely different structure and this shows that the claim is indefinite. Thus, the claims fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention and are indefinite. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).



Original Contentions



Amended Contentions

The preamble of claim 27 of a "clamping mechanism" is limiting because it provides antecedent basis for the claimed limitation "the clamp mounting surface being structured to cooperate with the mounting structure of the clamping mechanism." See *Intervet Am. Inc. v. Kee-Vet Labs. Inc.*, 887 F.2d 1050 (Fed. Cir. 1989); *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332 (Fed. Cir. 2003). The Court held that with regard to claim 21, because the claim defined "clamping mechanism" as being limited to a base portion, a jaw portion and a compressible pad fixed to the surface of the jaw portion" that an "external member" could be a "frame member". (Dkt. 96 at 20:9-21:6.) However, the Court struggled to reconcile claim 27 noting that claim 27 describes the "clamping mechanism" as including frame members and a structure for mounting on an external item. (Dkt. No. 96 at 22:15-23:7.). Accordingly, claim 27 is invalid as indefinite.

## g. Claims 21, 23, 27 and 30 are Invalid As Obvious Over Wang et al. And Over Arkon's Own CM228 Products

Next, all asserted claims are obvious over U.S. Patent No. 5,305,381 to Wang. As explained below, Wang teaches a spring-loaded device holder with inclined arms with pads. The only issue is whether it would be obvious to modify the arms of Wang to be adjustable or to have different shapes. Because these elements were in existence at the time and it would be routine for one of skill in the art to combine these elements for predictable results, the claims of the '212 Patent are obvious.

Although the Wang patent was included in a denied petition for *Inter Partes* review, the denial was on the very narrow ground that Wang failed to teach or suggest a "clamping mechanism" including a "structure for mounting on an external member" and "first and second frame members" with "one of the first and second frame members including . . . a clamp mounting surface . . . structured to cooperate with the mounting structure of the clamping mechanism." (Karish Dec., Exh. G at 10-11; Exh. H at 3-7.) The USPTO rejected Wang as anticipating the

-20-

1    '212 Patent, but refused to consider obviousness challenges based on Wang. The

2    decision of the USPTO is not binding on this Court. *Wisconsin Alumni Research*

3    *Found. v. Apple, Inc.*, 135 F. Supp. 3d 865, 874–75 (W.D. Wis. 2015)("The IPR

4    proceeding is subject to different standards, purposes and outcomes than both the

5    original prosecution and this court proceeding. Not only is PTAB's decision not

6    binding in these proceedings, the law is not even clear on whether and how much

7    the PTAB's decision denying Apple's request for review should affect the *weight*

8    given to the two prior art references presented during the IPR proceedings.")

9         A person of ordinary skill in the art of holders for portable electronic devices

10   at the time of the '212 Patent filing would have knowledge of work-holding

11   mechanisms, such as clamps or vises, springs and elastic isolation materials and

12   plastics.  The requisite knowledge and experience could be gained through a four

13   year degree in mechanical engineering or one or more years of experience in the

14   field. (Bryant Dec., Exh. B at p. 39.)  Plaintiff contends that a person of ordinary

15   skill in the art of the invention claimed in the '212 patent is "an engineer or a

16   product designer with at least six years of experience with mechanical design and

17   manufacturing that is obtained through vocational studies, from working in the

18   mechanical arts, or a combination of both." (Karish Dec., Exh. E at 9.)  There is no

19   doubt that it would be routine for one with either level of skill to combine the

20   commonly known elements to obtain the claimed invention.

21        In fact, the prior art is closer to the claimed invention than the accused

22   Arkon products.  In particular, U.S. Patent No. 5,305,381 to Wang et al. teaches a

23   spring-loaded cradle with inclined arms (4) with elastomer pads (5).  First frame

24   member 2 and second frame member 20 are biased together by a spring 60. (Karish

25   Dec., Exh. J at Figs. 2 and 6 and col. 4, lines 1-11, col. 6, lines 36-42, col. 7, lines

26   4-8, col. 9, lines 13-20.) Jeffrey Carnevali admitted Wang showed an inclined arm.

27   (Karish Dec., Exh. K (Carnevali Deposition) at 104:21-105:1, 108:3-20.)

28

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

1



PRIOR ART

8

9     The Wang patent shows that by 1994 spring-loaded portable electronic

10 device holders with inclined arms were well known to one of ordinary skill in the

11 art. Although aware of the Wang patent, the inventor Jeffrey Carnevali, NPI's

12 President, never disclosed the Wang patent to the U.S. Patent and Trademark

13 Office. (SUF, 30.)  Moreover, as far back as 1994, NPI itself was selling a spring-

14 loaded cradle similar to the accused products that it did not disclose. (SUF, 31, 32.)

15     Importantly, Arkon had its own CM228 product on sale more than one year

16 prior to the filing date of the '212 Patent that had spring-loaded frame members

17 and clamping mechanisms that were removeable and adjustable. (SUF, 33.)

18



23 Arkon's accused Slim Grip and Universal Tablet Mount products are nearly

24 identical to Arkon's prior art CM228 product, and it would be wrong to prevent

25 Arkon from modifying its own prior art product to have differently angled or

26 vertically adjustable arms as was well known in the art as explained below.

27     Whether the inclined arms are formed of a single piece or multiple pieces,

28 and where multiple pieces are connected, are obvious matters of design choice

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

based on manufacturing and packaging considerations.[9] (Bryant Dec., Exh. B at 6-7.) It was well known to have multiple piece and adjustable arms as shown in the Arkon CM228 Product.  It was also well known to have arms that could be vertically and horizontally adjustable. Indeed, NPI displayed a Gamber-Johnson laptop holder in its 2001 Catalog that had vertically and horizontally adjustable arms, but did not disclose the product to the USPTO. (SUF, 33, 34.)

Additionally, MacKenzie (U.S. Patent No. 4,406,928), Rioux (U.S. Patent No. 5,222,132), Fan (U.S. Patent No. 5,697,071), Wisniewski (U.S. Patent No. 6,382,580), CN2344933 and DE19719512 and Panavise (all of which are directed to mounting products) teach numerous different arm shapes including arms having a jaw portion extending at an obtuse angle from a base portion. (Karish Dec., Exhs. N-T.) Modifying the arms of Wang to have an elongated base portion and a jaw portion extending from the base portion at an obtuse angle would have been obvious. It is simply substituting known elements for others to obtain predictable results and because modification of the angle of the arms was obvious to try depending on the objects to be held and the mount's use. Likewise, it would have been obvious to modify the arms of Arkon's CM228 product to have an elongated base portion or to be vertically adjustable.

U.S. Patent No. 5,788,202 to Richter for holding a phone in a vehicle teaches that "the inside walls may be adapted in shape to any particular object to be held. Then the particular object is especially well retained in the support device." (Karish Dec., Exh. U at col. 3, lines 29 to 33.) This would have led one of ordinary skill in the art to modify Wang as taught by one or more of MacKenzie (U.S. Patent No. 4,406,928), Rioux (U.S. Patent No. 5,222,132), Fan (U.S. Patent No. 5,697,071), Wisniewski (U.S. Patent No. 6,382,580), CN2344933 and

---

[9] Moreover, if the Court accepts NPI's arguments that the claims are broad enough to cover Arkon's Mobile Grip 2 products which have fixed, single-piece arms and clamping mechanisms then Arkon submits that at least claims 21 and 27 are anticipated by Wang and Arkon's CM228.

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

1  DE19719512 to accommodate phones, GPS devices, tablet computers and laptop

2  computers of differing shapes and thicknesses. (Bryant Dec., Exh. B at 13.)

3

4

5    

6

7

8         MacKenzie             Rioux            Wisniewski

9  (Patent No. 4,406,928)  (Patent No. 5,222,132)  (Patent No. 6382580)

10   

11

12

13

14        CN2344933            DE19719512             Fan

15                                   (Patent No. 5,697,071)

16

17

18 

19

20

21

22           The Panavise PortaGrip 2000 [10]

23       Thus, the asserted claims of the '212 are obvious over either Wang or

24 Arkon's own CM228 prior art product because it would have been obvious to one

25 or ordinary skill to modify either of those products to have differently shaped and

26 vertically adjustable arms to better hold particular objects.

27 ────────────

28     [10] The Panavise Cradle is also shown in NPI's 2001 catalog. (Karish Dec., Exh.M at
NPI-ARK000005669, no. 29.)

-24-

**V.      Plaintiff Failed To Patent Mark And Is Not Entitled To Pre-Filing Damages**

Pursuant to 35 U.S.C. §287(a), a patentee must mark a product with the patent number or "an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent." Absent proper marking, no damages can be recovered prior to actual notice. The purpose behind the marking statute is to give notice to the public of the patent. *American Med. Sys. Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523 (Fed. Cir. 1993). The patent owner has the burden of proving that it complied with the statutory requirements for marking or notice. *Maxwell v. J. Baker Inc.*, 86 F.3d 1098 (Fed. Cir. 1996). Compliance is a question of fact. *Id*.

NPI placed the word "patented" on its products allegedly practicing the '212 Patent. However, NPI did not place the '212 Patent number on the products. (SUF, 36.) Elsewhere on the products was NPI's main website address, but not the address of NPI's patents and trademarks webpage. (SUF, 37.) This is not adequate notice, because this address is not a posting on the Internet that associates the patented article with the number of the patent. A user could search NPI's website and find a link to a "Patents and Trademarks" page. However, that page lists over a hundred patents, none of which are associated with any of the thousands of products sold by NPI. (SUF, 38.) It is undisputed that NPI never contacted Arkon prior to filing of the Complaint in this action regarding Arkon's alleged infringement. (SUF, 39.) Accordingly, because NPI failed to mark its products or provide actual notice to Arkon of alleged infringement prior to filing suit, NPI is not entitled to any prefiling damages.

## Conclusion

For the foregoing reasons, Arkon's motion for summary judgment should be granted.

DEFENDANT ARKON RESOURCES, INC.'S
MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KARISH & BJORGUM, PC

Date:  October 25, 2018         By: _/Marc Karish/_____
                                    Marc Karish
                                    Attorneys for Defendant
                                    ARKON RESOURCES, INC.

-26-