1   JONATHAN T. MCMICHAEL (CSB No. 304737)
    jmcmichael@fenwick.com
2   DAVID K. TELLEKSON (admitted *pro hac vice*)
    dtellekson@fenwick.com
3   EWA M. DAVISON (admitted *pro hac vice*)
    edavison@fenwick.com
4   JESSICA M. KAEMPF (admitted *pro hac vice*)
    jkaempf@fenwick.com
5

6   FENWICK & WEST LLP
    1191 Second Avenue, 10th Floor
7   Seattle, WA  98101
    Telephone:  206.389.4510
8   Facsimile:   206.389.4511

9   Thomas N. FitzGibbon (CSB No. 169194)
    tom@apexlaw.com
10  APEX LAW APC
    233 Wilshire Blvd., Suite 400
11  Santa Monica, CA 90401
    Telephone:  310.230.5280
12  Facsimile:   310.496.3175

13
    Attorneys for Plaintiff
14  NATIONAL PRODUCTS INC.

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17                    WESTERN DIVISION

18

19  NATIONAL PRODUCTS INC.,          Case No.: 2:18-CV-02936-AG (SSx)

20          Plaintiff,               **NATIONAL PRODUCTS INC.'S
                                     RESPONSE IN OPPOSITION TO
21      v.                           ARKON RESOURCES, INC.'S
                                     MOTION FOR SUMMARY
22  ARKON RESOURCES INC.,            JUDGMENT**

23          Defendant.               Date:      January 7, 2019
                                     Time:      10:00 a.m.
24                                   Judge:     Andrew J. Guilford

25

26

27

28

---

NPI'S OPP'N TO ARKON'S MSJ               Case No. 2:18-CV-02936-AG (SSx)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................1

II.   ARKON IS NOT ENTITLED TO SUMMARY JUDGMENT OF
      NON-INFRINGEMENT ............................................................................1

    A.   Summary Judgment as to RoadVise is Improper. ............................2

        1.   RoadVise Satisfies the "Obtuse Angle" Limitation. .................2

        2.   RoadVise Includes a "Frame Member" With Both a
             "Device Mounting Surface" and a "Clamp Mounting
             Surface." ....................................................................................2

        3.   RoadVise Satisfies the "Structured to Cooperate"
             Limitation. ................................................................................4

    B.   Summary Judgment as to Mobile Grip 2 is Improper. ......................5

        1.   Mobile Grip 2 Includes a "Frame Member" With a
             "Device Mounting Surface" and a "Clamp Mounting
             Surface." ....................................................................................5

        2.   Mobile Grip 2 Satisfies the "Structured to Cooperate"
             Limitation. ................................................................................6

        3.   Mobile Grip 2 Satisfies the "Obtuse Angle" Limitation. ...........6

        4.   Mobile Grip 2 Includes a "Resilient Compressible Pad
             Fixed to a Surface of the Jaw Portion." .....................................7

    C.   Summary Judgment as to Slim Grip is Improper. .............................7

        1.   Slim Grip Satisfies the "Obtuse Angle" Limitation. .................7

        2.   Slim Grip Satisfies the "Structured to Cooperate"
             Limitation. ................................................................................8

    D.   Summary Judgment as to Universal Tablet Holder is Improper. .........9

        1.   Universal Tablet Holder Satisfies the "Obtuse Angle"
             Limitation. ................................................................................9

        2.   Universal Tablet Holder Satisfies the "Structured to
             Cooperate" Limitation. .............................................................9

    E.   Summary Judgment is Improper as to Claim 27 and All
        Dependent Claims. ........................................................................9

FENWICK & WEST LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS
## (CONT.)

**Page**

III.   ARKON IS NOT ENTITLED TO SUMMARY JUDGMENT OF INVALIDITY ................................................................ 10

    A.   Claim 27 of the '212 Patent is Not Invalid as Indefinite. .................. 10

        1.   Arkon Waived its Indefiniteness Arguments. .......................... 11

        2.   Arkon's Indefiniteness Arguments are Baseless. .................... 11

    B.   The '212 Patent Claims are Not Invalid as Obvious. ......................... 14

        1.   Arkon Fails to Show That the Prior Art Satisfies the Claim Limitations. ..................................................................... 15

        2.   Arkon Fails to Address Secondary Considerations. ................. 17

        3.   Arkon Fails to Establish the References as Prior Art. .............. 17

        4.   Arkon Fails to Establish a Motivation to Combine the Wang Patent or CM228 with the Identified References. .......... 18

        5.   At a Minimum, Genuine Issues of Material Fact Preclude Summary Judgment. ................................................................. 20

IV.   ARKON IS NOT ENTITLED TO SUMMARY JUDGMENT OF NO PRE-FILING DAMAGES .......................................................... 21

V.   THE COURT SHOULD STRIKE THE IMPROPER PORTIONS OF THE DECLARATION OF PAUL BRASSARD .......................................... 24

VI.   CONCLUSION .......................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Air Turbine Tech., Inc. v. Atlas Copco AB*,
   410 F.3d 701 (Fed. Cir. 2005) ...................................................................... 24

*Allergan USA, Inc. v. Medicis Aesthetics, Inc.*,
   No. 13-cv-1436-AG, 2014 WL 5488895 (C.D. Cal. Aug. 12, 2014) ................. 4

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................... 1

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
   448 F.3d 1324 (Fed. Cir. 2006) ...................................................................... 3

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
   672 F.3d 1335 (Fed. Cir. 2012) .................................................................... 12

*Audionics Sys., Inc. v. AAMP of Fla., Inc.*,
   No. 12-cv-10763-MMM, 2015 WL 12712288 (C.D. Cal. July 10, 2015).... 15, 21

*BASF Corp. v. Johnson Matthey Inc.*,
   875 F.3d 1360 (Fed. Cir. 2017) .................................................................... 10

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
   80 F.3d 1553 (Fed. Cir. 1996) ........................................................................ 4

*Biocell Tech. LLC v. Arthro-7*,
   No. 12-cv-516-JVS, Dkt. No. 196 (C.D. Cal. Apr. 16, 2013)............................ 11

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
   249 F.3d 1341 (Fed. Cir. 2001) .................................................................... 16

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
   725 F.3d 1341 (Fed. Cir. 2013) .................................................................... 18

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
   635 F.3d 1373 (Fed. Cir. 2011) ............................................................*passim*

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*,
   No. 15-cv-02812-ODW, 2016 WL 10586287 (C.D. Cal. Dec. 15, 2016)........... 23

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
**(CONT.)**

**Page(s)**

*Drop Stop LLC v. Zhu,*
   No. 16-cv-7916-AG, Dkt. No. 138 (C.D. Cal. Aug. 28, 2017)...........................11

*Eaton Corp. v. Rockwell Int'l Corp.,*
   323 F.3d 1332 (Fed. Cir. 2003) ..................................................................13

*Ecolab, Inc. v. Envirochem, Inc.,*
   264 F.3d 1358 (Fed. Cir. 2001) ...................................................................3

*Ecolab, Inc. v. Paraclipse, Inc.,*
   285 F.3d 1362 (Fed. Cir. 2002) ...................................................................8

*Gart v. Logitech, Inc.,*
   254 F. Supp. 2d 1119 (C.D. Cal. 2003) ......................................................24

*Glob. Traffic Techs., LLC v. Emtrac Sys., Inc.,*
   946 F. Supp. 2d 884 (D. Minn. 2013) .........................................................23

*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC,*
   620 F.3d 1287 (Fed. Cir. 2010) ..................................................................15

*Hilgraeve Corp. v. McAfee Assocs., Inc.,*
   224 F.3d 1349 (Fed. Cir. 2000).............................................................*passim*

*Howmedica Osteonics Corp. v. Zimmer, Inc.,*
   640 F. App'x 951 (Fed. Cir. 2016)..............................................................13

*In re Chapman,*
   595 F.3d 1330 (Fed. Cir. 2010) ..................................................................19

*In re Gartside,*
   203 F.3d 1305 (Fed. Cir. 2000) ..................................................................18

*InfoGation Corp. v. ZTE Corp.,*
   No. 16-cv-01901-H-JLB, 2017 WL 1821402 (S.D. Cal. May 5, 2017) .............14

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.,*
   887 F.2d 1050 (Fed. Cir. 1989).................................................................13

*Jarrow Formulas, Inc. v. Now Health Grp., Inc.,*
   No. 10-cv-8301-PSG-JC, Dkt. No. 156 (C.D. Cal. Aug. 2, 2012)....................24

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES
## (CONT.)

**Page(s)**

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) ........................................................................ 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................................................ 21

*Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*,
520 F.3d 1367 (Fed. Cir. 2008) ...................................................... 14

*Mintz v. Dietz & Watson, Inc.*,
679 F.3d 1372 (Fed. Cir. 2012) ................................................. 17, 21

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
No. 13-cv-07228-ODW, 2015 WL 847391 (C.D. Cal. Feb. 26, 2015) ............. 23

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
138 F.3d 1437 (Fed. Cir. 1998) ................................................. 21, 22

*Pac. Bioscience Labs., Inc. v. Nutra Luxe MD, LLC*,
No. 10-cv-0230-JLR, 2012 WL 12845608 (W.D. Wash. July 9, 2012) ............. 11

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 3

*Plantronics, Inc. v. Aliph, Inc.*,
724 F.3d 1343 (Fed. Cir. 2013) ...................................................... 21

*Ride & Show Eng'g, Inc. v. Walt Disney Parks & Resorts, L.L.C.*,
No. 03-cv-6895-GAF, 2005 WL 6220490 (C.D. Cal. Sept. 22, 2005) .............. 13

*RPost Holdings, Inc. v. Trustifi Corp.*,
No. 10-cv-1416-PSG, 2011 WL 13175664 (C.D. Cal. Dec. 27, 2011) ............. 20

*Rutherford v. Trim–Tex, Inc.*,
803 F. Supp. 158 (N.D. Ill. 1992) .................................................... 23

*Silicon Labs., Inc. v. Cresta Tech. Corp.*,
No. 14-CV-03227-PSG, 2016 WL 791792 (N.D. Cal. Mar. 1, 2016) .............. 11

*Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*,
183 F.3d 1347 (Fed. Cir. 1999) ...................................................... 18

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES
## (CONT.)

**Page(s)**

*Stryker Corp. v. Zimmer Inc.*,
  No. 10-cv-1223, 2012 WL 6821683 (W.D. Mich. Nov. 29, 2012)....................24

*Tec Air, Inc. v. Denso Mfg. Mich. Inc.*,
  192 F.3d 1353 (Fed. Cir. 1999) ...............................................................20

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors
  USA, Inc.*,
  617 F.3d 1296 (Fed. Cir. 2010) ...........................................................17

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
  374 F.3d 1151 (Fed. Cir. 2004) ...........................................................18

*Unwired Planet LLC v. Google Inc.*,
  111 F. Supp. 3d 1120 (D. Nev. 2015) ...................................................13

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
  200 F.3d 795 (Fed. Cir. 1999) ...............................................................1

*Williamson v. Google Inc.*,
  No. 15-cv-00966-BLF, 2017 WL 3232582 (N.D. Cal. July 27, 2017)..............12

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
  19 F.3d 1418 (Fed. Cir. 1994) ...............................................................8

## STATUTES

35 U.S.C. § 287(a) ...............................................................................21

## OTHER AUTHORITIES

Fed. R. Civ. P. 56.................................................................................24

Fed. R. Evid. 701(c)........................................................................24, 25

Local Patent Rules W.D. Wash. LPR 124............................................12

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## I.     INTRODUCTION

Arkon moves for summary judgment of non-infringement as to all accused products, invalidity for indefiniteness, invalidity for obviousness, and no pre-suit damages.  Dkt. No. 170 ("Mot.").  But in raising nearly every issue in the case, Arkon fails to establish entitlement to summary judgment for any of them.

Arkon, as the movant, bears the burden of showing that summary judgment is appropriate.  Notably, however, Arkon's motion consists only of rote recitations of its own arguments—many of which are undeveloped, lacking evidentiary support, and contrary to the Washington Court's claim construction order.  Further, Arkon entirely fails to address NPI's evidence and expert testimony.  The issues identified by Arkon are not "uncontroverted," but instead are subject to genuine disputes of material fact that cannot, as a matter of law, be resolved on summary judgment in Arkon's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("[A]ll justifiable inferences are to be drawn in [the non-movant's] favor.").  Arkon's motion should be denied.

## II.     ARKON IS NOT ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT

Arkon asks for summary judgment of non-infringement as to every accused product and all asserted claims.  But to obtain summary judgment, Arkon "bears the initial burden of coming forward with sufficient evidence to demonstrate that there is no material issue of fact that would preclude summary judgment." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806 (Fed. Cir. 1999).  Only if Arkon is able to do so, the burden then shifts to NPI to identify "material issues of fact which require resolution at trial." *Id.* at 807.

Arkon does not satisfy its summary judgment burden here.  Nearly all of Arkon's arguments are premised on overly narrow claim construction positions, many of which were already rejected by the Washington Court.  Thus, these arguments are irrelevant.  Further, applying the correct claim constructions, NPI's

FENWICK & WEST LLP
ATTORNEYS AT LAW

1 expert testimony shows that Arkon's products infringe or, at the very least, there are

2 factual disputes precluding summary judgment in Arkon's favor.

### A.   Summary Judgment as to RoadVise is Improper.

#### 1.   RoadVise Satisfies the "Obtuse Angle" Limitation.

5 Arkon argues that RoadVise lacks a "jaw portion" that extends from one end

6 of a "base portion" at an "obtuse angle" because its jaw portion is "curved." Mot.

7 at 8. However, Arkon's arguments—that the claimed "jaw portion" must be a

8 "*straight* jaw portion" that would provide a "*single* obtuse angle"—are contrary to

9 the Washington Court's claim construction. *Id* (emphasis added). In construing the

10 claims, the Washington Court specifically rejected Arkon's "overly narrow"

11 proposal to construe the jaw portion as necessarily including a "straight portion."

12 Dkt. No. 96 ("Claim Const. Order") at 25-26, 30. Thus, because Arkon's argument

13 is premised on a rejected claim construction, the Court should deny its motion.

14 Applying the correct claim construction, NPI's expert, James B. Babcock

15 ("Babcock"), shows that RoadVise meets this limitation. As

16 shown in the figure at right, Babcock identifies the claimed

17 jaw portion that grips a mobile device, a base portion that

18 mounts to the central "frame member," and the obtuse angle

19 between them. Babcock Decl., Ex. A ("Babcock Inf. Rep."),

20 Ex. C ¶¶ 12-15; *see also id.* ¶¶ 5-10 (identifying base and jaw



21 portions). At the very least, NPI's expert testimony creates a genuine dispute of

22 material fact as to whether RoadVise satisfies the limitation. *See Crown Packaging

23 Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir.

24 2011) (vacating summary judgment due to conflicting expert testimony); *Hilgraeve

25 Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1353-54 (Fed. Cir. 2000).

#### 2.   RoadVise Includes a "Frame Member" With Both a "Device Mounting Surface" and a "Clamp Mounting Surface."

28 Arkon raises three arguments regarding the "frame member" limitation, none

Fenwick & West LLP
Attorneys at Law
Mountain View

of which has merit.  First, it argues that the "frame member" of RoadVise lacks a clamp mounting surface.  Mot. at 9.  However, its argument assumes, incorrectly and without support, that the rods *must be* "frame members," and cannot be part of the "clamping mechanism."  Such an argument is improper at least because it limits the claim terms to an exemplary embodiment from the specification—here, the "frame members" to a "rod-and-tube" embodiment.  *See id.* at 9-10; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (courts should "avoid the danger of reading limitations from the specification into the claim").

Second, Arkon argues that separate claim limitations are presumed to be distinct components.  Mot. at 9.  Arkon's argument is misplaced, as NPI does not argue that a single component of RoadVise satisfies multiple claim limitations.  Rather, NPI identifies separate components as satisfying the "clamping mechanism" and "second frame member" limitations.  Babcock Inf. Rep., Ex. C at ¶¶ 4, 20-22.  Arkon provides no authority for its suggestion that where an accused device includes multiple components with the same shape, every one of those components must satisfy the same limitation, and only that limitation.  Nor does the *CAE Screenplates* case on which Arkon relies support its position.  Mot. at 9-10.  Rather, "the use of two terms in a claim requires that they connote different *meanings*, not that they necessarily refer to two different *structures*."  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006).

Third, Arkon argues that RoadVise "function[s] differently than the claimed invention."  Mot. at 10.  Arkon's contention is legally irrelevant.  *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) ("Where the function is not recited in the claim itself by the patentee, we do not import such a limitation.").  Regardless, RoadVise functions as required by the claims.  *See, e.g.*, Babcock Inf. Rep., Ex. C at ¶¶ 4, 19, 21-22, 27, 29-30 (describing RoadVise in operation).[1]

---

[1] Arkon states that the manufacturer of RoadVise holds two patents.  Mot. at 7.  However, Arkon fails to provide any evidence supporting its attorney argument.

At most, Arkon's arguments amount to genuine disputes of material fact as to what constitutes the frame member and clamp mounting surface. *See* Mot. at 9. Babcock identified each of the disputed claim limitations in RoadVise. Babcock Inf. Rep., Ex. C at ¶¶ 21, 23, 26-27 (claimed frame member (the central body portion) includes a device mounting surface (the upper surface) and a clamp mounting surface (the side surface)). This testimony precludes summary judgment. *Crown Packaging Tech.*, 635 F.3d at 1384; *Hilgraeve*, 224 F.3d at 1353-54.

### 3. RoadVise Satisfies the "Structured to Cooperate" Limitation.

Arkon argues that RoadVise lacks a clamp mounting surface that is "structured to cooperate with the mounting structure of the clamping mechanism." Mot. at 11. It first argues that the clamping mechanisms must be "vertically adjustable." *Id.* As an initial matter, Arkon did not seek a claim construction under which the clamping mechanism would need to be "adjustable" at all, let alone "*vertically* adjustable," nor did the Washington Court construe it as such. Further, such a reading of the claims is contrary to the specification, which describes adjustability as "optional." Dkt. No. 170-2 ("'212 patent") at 6:11-14; *see Allergan USA, Inc. v. Medicis Aesthetics, Inc.*, No. 13-cv-1436-AG (JPRx), 2014 WL 5488895, at *12 (C.D. Cal. Aug. 12, 2014) (J. Guilford) (improper to "import an expressly optional portion of the specification into the claims"). Arkon next argues that the "clamp mechanisms are attached to rods." Mot. at 11. However, as discussed below, this disregards NPI's evidence that the rods are *part of* the clamping mechanisms (i.e., the mounting structures used to attach to the central frame member), not frame members. Because Arkon does not apply the proper claim construction and disregards NPI's evidence, its motion should be denied.

---

Arkon's assertion is also disputed and not relevant. *See* Resp. to Arkon's Statement of Fact Nos. 3-4; *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent.").

Babcock, applying the correct construction, describes how this claim limitation is satisfied by RoadVise. The rods in RoadVise constitute the claimed "mounting structure." Babcock Inf. Rep., Ex. C at ¶¶ 4-5, 7-8. The clamp mounting surface is the side of the central frame member. *Id.* ¶¶ 25-26. That surface is "structured to cooperate" with the mounting structure—that is, it is shaped to receive the rods, thereby holding the pad in place so that it is spaced away from and inclined toward the device mounting surface. *Id.* ¶¶ 26-27. At very least, this testimony creates a dispute of material fact and precludes summary judgment.

**B.       Summary Judgment as to Mobile Grip 2 is Improper.**

      **1.       Mobile Grip 2 Includes a "Frame Member" With a "Device Mounting Surface" and a "Clamp Mounting Surface."**

Arkon argues that Mobile Grip 2 lacks the claimed "clamp mounting surface" because the "arms" are "formed as unitary and non-adjustable structures." Mot. at 13. Arkon cites no evidentiary or legal support for its attorney argument. *See id.* At base, Arkon's argument is an impermissible attempt to read additional limitations into the claim language—namely, that a clamping mechanism must be "non-unitary" (a term Arkon does not explain) and "adjustable" (a requirement not claimed and in direct conflict with the specification). *Supra* at 4.

Applying the proper claim construction, Babcock shows that Mobile Grip 2 includes a first frame member with a device mounting surface (the upper surface) and a clamp mounting surface (the surfaces of the "core" to which the rubber overmold is mounted). Babcock Inf. Rep., Ex. D at ¶¶ 20, 22, 24-27. Moreover, Babcock explains that the clamping mechanism and frame member are "non-unitary," at least because they are distinct components, comprised of distinct materials, with distinct shapes and functions. *See id.* ¶¶ 8, 24-27. Whether the structure identified by Babcock constitutes a clamp mounting surface is a factual issue precluding summary judgment. *Crown Packaging Tech.*, 635 F.3d at 1384; *Hilgraeve*, 224 F.3d at 1353-54.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### 2.  Mobile Grip 2 Satisfies the "Structured to Cooperate" Limitation.

Arkon argues that Mobile Grip 2 lacks a clamp mounting surface that is "structured to cooperate with the mounting structure of the clamping mechanism." Mot. at 13.  It again asserts that the claimed clamping mechanism must be "adjustable"—a requirement not claimed.  Mot. at 13; *see supra* at 4.  Arkon also argues that "the core extends from the device mounting surface and is therefore not 'spaced away from it.'"  Mot. at 13-14.  However, this assertion lacks evidentiary support and is inconsistent with the claim language, which requires a "pad" (not a "core") to be "spaced away from" the device mounting surface.  Babcock Inf. Rep., Ex. D at ¶¶ 26-27.  Finally, Arkon's argument that the alleged prior art is "closer to the '212 patent" is wrong.  *See* Mot. at 14.  As explained below, unlike Mobile Grip 2, the prior art does not meet several claim limitations including, for example, the "structured to cooperate" limitation that was found to be missing by the Patent Trial and Appeal Board ("PTAB").

Notwithstanding Arkon's arguments, Babcock identifies the way in which Mobile Grip 2 satisfies the claim limitation.  Babcock Inf. Rep., Ex. D at ¶¶ 26-27.  The clamp mounting surface and mounting structure act together to exert an inward and downward force on an accessory device.  *Id.* ¶ 27.  At most, Arkon's arguments present a genuine dispute of material fact precluding summary judgment.

### 3.  Mobile Grip 2 Satisfies the "Obtuse Angle" Limitation.

Arkon raises two arguments that Mobile Grip 2 does not satisfy the "obtuse angle" limitation, both of which are incorrect.  First, Arkon argues that the clamping mechanism is "perpendicular," rather than obtuse.  Mot. at 14.  But as shown below, this argument disregards NPI's infringement theory that the rubber overmold, not the inner plastic core, is the clamping mechanism.  Second, Arkon argues that the clamping mechanism is not "substantially rigid" because it "can be bent with little finger pressure."  *Id.*  Arkon cites no expert opinion and provides no

explanation of what is meant by "little finger pressure."  *See id.*

As shown to the right, Babcock explains that Mobile Grip 2 satisfies this claim limitation.  Specifically, the rubber overmold is the "clamping mechanism" with a "substantially rigid jaw portion" extending at an obtuse angle.  Babcock Inf. Rep., Ex. D at ¶¶ 4, 8-14.  Thus, at most, Arkon's contrary arguments present material fact disputes that preclude summary judgment.



### 4.     Mobile Grip 2 Includes a "Resilient Compressible Pad Fixed to a Surface of the Jaw Portion."

Arkon argues that Mobile Grip 2 lacks the "resilient compressible pad" limitation because the pad is "substantially incompressible" and "integral with the rubber overmold."  Mot. at 14.  However, Arkon's assertion that the pad of Mobile Grip 2 is not a "resilient compressible pad" is at odds with its position, for purposes of invalidity, that rubber pads in the prior art satisfy the limitation.  Babcock Inf. Rep., Ex. D at ¶¶ 16, 34; Dkt. No. 173-2 ("Bryant Inv. Rep.") at 24 (citing specification noting that elastomers such as rubber satisfy the limitation).

Moreover, after examining Mobile Grip 2, Babcock opines that the pad is "compressible" and "fixed" to the jaw portion, both literally and under the doctrine of equivalents.  Babcock Inf. Rep., Ex. D at ¶¶ 15-18; *id.* at App'x 1.  Arkon fails to address either theory, and its motion for summary judgment should be denied.

### C.     Summary Judgment as to Slim Grip is Improper.

### 1.     Slim Grip Satisfies the "Obtuse Angle" Limitation.

Arkon argues that Slim Grip lacks the "obtuse angle" limitation.  It first argues that the angle is acute.  Mot. at 15.  But as shown below, Arkon's expert merely identifies and measures the components differently than NPI's expert—at most, a genuine dispute of material fact.  Arkon further argues that Slim Grip is "very similar" to the prior art, and that it would be "inherently obvious to simply divide a known structure [i.e., the arm in the prior art] into two pieces [i.e., as found

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

in the '212 patent invention and accused products]." *Id.* This assertion is misplaced, as "it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment." *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994); *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1377 (Fed. Cir. 2002). Further, as Arkon acknowledges, "it is not clear how the Wang arm 4 attaches to the frame 20." Mot. at 15. This deficiency is critical because, as NPI's expert explains, the '212 patent teaches that the claimed angle is measured in relation to that point of attachment. Babcock Inf. Rep., Ex. E at ¶ 14.

Applying the claim construction, Babcock identifies the base and jaw portions in each version of the Slim Grip, as well as the obtuse angle between them. *Id.* ¶¶ 12-14. Thus, at most, Arkon's motion merely identifies a dispute of material fact that cannot be resolved in its favor on summary judgment. *Crown Packaging Tech.*, 635 F.3d at 1384; *Hilgraeve*, 224 F.3d at 1353-54.

### 2. Slim Grip Satisfies the "Structured to Cooperate" Limitation.

Arkon argues that Slim Grip lacks a clamp mounting surface that is "structured to cooperate with the mounting structure of the clamping mechanism." Mot. at 16. It first repeats its argument that the clamping mechanism must be "vertically adjustable." *Id.* As explained above, the claims impose no such requirement. *See supra* at 4. Arkon also asserts that the pad is "adjacent" to the device mounting surface. Mot. at 16. However, Arkon's assertion lacks support in expert testimony, and is untethered from the claim language requiring that the pad be "spaced away from and inclined toward the device mounting surface." *See id.*

Applying the proper construction, Babcock shows that Slim Grip satisfies this limitation. The clamp mounting surface acts together with the mounting structure by receiving that structure, and maintaining the resilient compressible pad

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

such that it is "spaced away from and inclined toward the device mounting surface." Babcock Inf. Rep., Ex. E at ¶¶ 24-26. Thus, at the very least, there is a genuine dispute of material fact as to whether this limitation is satisfied. *See id.*

### D.  Summary Judgment as to Universal Tablet Holder is Improper.

#### 1.  Universal Tablet Holder Satisfies the "Obtuse Angle" Limitation.

Arkon makes the same arguments for Universal Tablet Holder as it does for Slim Grip—namely, that the angle is "acute" and that the clamping mechanism is similar to the prior art. Mot. at 17-18. Those arguments fail for the same reasons already discussed above. *Supra* at 7-8.

Moreover, as Babcock explains, the jaw portion in Universal Tablet Holder satisfies the "obtuse angle" limitation. Babcock Inf. Rep., Ex. F at ¶¶ 12-14. Thus, genuine disputes of material fact preclude summary judgment as to this limitation.

#### 2.  Universal Tablet Holder Satisfies the "Structured to Cooperate" Limitation.

Arkon argues that Universal Tablet Holder does not satisfy the "structured to cooperate" limitation because the clamping mechanisms are not "vertically adjustable." Mot. at 18. As already discussed, this argument fails because there is no such requirement in the claims. *Supra* at 4.

Setting aside Arkon's incorrect claim interpretation, Babcock shows that the Universal Tablet Holder includes a clamp mounting surface that is "structured to cooperate with the mounting structure of the clamping mechanism," as claimed. Babcock Inf. Rep., Ex. F at ¶¶ 24-26. Thus, at the very least, there is a genuine dispute of material fact as to whether this limitation is satisfied. *See id.*

### E.  Summary Judgment is Improper as to Claim 27 and All Dependent Claims.

Arkon's non-infringement arguments for claim 27 rely entirely on the "elongated" language describing the claimed base portion and jaw portion. Mot. at 12, 14, 17-19. Citing only the conclusory testimony of its President, Paul Brassard

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

("Brassard"),[2] Arkon argues that certain "base portions" and "jaw portions" are not sufficiently elongated because they have "a substantially similar length and width." Mot. at 12-18.  Nowhere does Arkon even articulate what "lengths" and "widths" it refers to in reaching its conclusions.  Its conclusory argument should be rejected.

Moreover, Brassard's statements are subject to genuine disputes of material fact because NPI's expert, after reviewing the specification and claims, and applying the Washington Court's construction, shows that each of the accused products satisfies these limitations.  The base portions of the accused products are "elongated" in that they have sufficient length to be mounted to the frame member, and the jaw portions are also "elongated" in that they extend to grip an accessory device.  Babcock Inf. Rep., Ex. C at ¶¶ 36-37 (RoadVise), Ex. D at ¶¶ 36-37 (Mobile Grip 2), Ex. E at ¶¶ 35-36 (Slim Grip), Ex. F at ¶¶ 35-36 (Universal Tablet Holder).  At most, Arkon's contrary lay testimony presents a genuine dispute of material fact as to whether the claim limitation is satisfied.  *Crown Packaging Tech.*, 635 F.3d at 1384; *Hilgraeve*, 224 F.3d at 1353-54.

As to the asserted dependent claims, Arkon identifies no separate ground for non-infringement.  Mot. at 19.  For the reasons above, its motion should be denied.

## III.   ARKON IS NOT ENTITLED TO SUMMARY JUDGMENT OF INVALIDITY

### A.   Claim 27 of the '212 Patent is Not Invalid as Indefinite.

To prevail on summary judgment of indefiniteness, Arkon must prove that claim 27 is indefinite "by clear and convincing evidence."  *See BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).  Arkon fails to do so.  Not only did Arkon waive its indefiniteness arguments, but its cursory and undeveloped assertions, which it attempts to fit into three short paragraphs, lack the factual and legal basis needed to prove invalidity.

---

[2] As discussed below, Brassard's statements should be stricken.  *Infra* § V.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### 1.   Arkon Waived its Indefiniteness Arguments.

Arkon served invalidity contentions while this case was pending before Judge Robart in the Western District of Washington.  Judge Robart's Standing Patent Order required Arkon to disclose, among other things, "any grounds for invalidity based on indefiniteness" in those contentions.  *See* McMichael Decl., Ex. 1 (J. Robart Standing Patent Order) at 2-3.  While Arkon did allege indefiniteness based on certain claim terms, it did ***not*** disclose the indefiniteness arguments that it now presents on summary judgment, challenging the "base portion" and "clamping mechanism" terms.  McMichael Decl., Ex. 2 (Original Contentions) at 4 n.1; *id.* Ex. E at 29 n.1; *see also* Dkt. No. 175-8 (Amended Contentions) at 4 n.1.

Because Arkon failed to disclose these arguments in its invalidity contentions, it has waived them.  *See Biocell Tech. LLC v. Arthro-7*, No. 12-cv-516-JVS (RNBx), Dkt. No. 196 at 14-17 (C.D. Cal. Apr. 16, 2013) (denying summary judgment of indefiniteness where defendant failed to identify terms in invalidity contentions); *Drop Stop LLC v. Zhu*, No. 16-cv-7916-AG (SSx), Dkt. No. 138 at 13-14 (C.D. Cal. Aug. 28, 2017) (J. Guilford) (striking untimely indefiniteness defense on summary judgment); *see also Silicon Labs., Inc. v. Cresta Tech. Corp.*, No. 14-CV-03227-PSG, 2016 WL 791792, at *3 (N.D. Cal. Mar. 1, 2016) (denying summary judgment of indefiniteness where defendant failed to identify terms in invalidity contentions, as the disclosure requirements of the patent local rules "are not optional"); *Pac. Bioscience Labs., Inc. v. Nutra Luxe MD, LLC*, No. 10-cv-0230-JLR, 2012 WL 12845608, at *2 (W.D. Wash. July 9, 2012) ("[L]ike the Northern District of California, the Local Patent Rules of this district were 'designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'").

### 2.   Arkon's Indefiniteness Arguments are Baseless.

Setting aside Arkon's waiver, its new indefiniteness arguments should be rejected for the independent reason that they are factually and legally unsupported.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Indeed, Arkon's arguments lack any citation to an opinion of a person of ordinary skill, and fail to address NPI's expert testimony showing that such a person would have no trouble understanding the claims with reasonable certainty. *See* Mot. at 19-20; Babcock Decl., Ex. B ("Babcock Inv. Rep."), ¶¶ 282-90. Arkon's arguments are insufficient to meet its burden of proving indefiniteness by clear and convincing evidence. *See, e.g.*, *Williamson v. Google Inc.*, No. 15-cv-00966-BLF, 2017 WL 3232582, at *10 (N.D. Cal. July 27, 2017) (conclusory assertions unsupported by expert opinion insufficient to meet "burden of showing indefiniteness").

Further, Arkon's undeveloped indefiniteness arguments are incorrect and certainly do not rise to the level of clear and convincing evidence. Arkon's arguments focus on two terms in claim 27: "base portion" and "clamping mechanism." With respect to the "base portion" term, Arkon asserts that the term is indefinite because NPI amended its identification of the "base portion" after claim construction. Mot. at 19. Arkon cites no legal authority for this assertion. Moreover, Arkon's argument essentially assumes that any time a party amends its infringement contentions based on a court's claim construction, the amended limitation is indefinite. This assumption is unfounded, particularly given that the local patent rules specifically contemplate amendments based on "a claim construction by the Court different from that proposed by the party seeking amendment." Local Patent Rules W.D. Wash. LPR 124.

Likewise, Arkon's argument regarding the term "clamping mechanism" in the preamble of claim 27 is misplaced. As an initial matter, Arkon incorrectly assumes that the preamble is limiting. *See* Mot. at 20. But "as a general rule preamble language is *not* treated as limiting" absent evidence to the contrary. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc*., 672 F.3d 1335, 1347 (Fed. Cir. 2012) (emphasis added). Here, no such evidence exists. On the contrary, claim 27 describes a "structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention"—i.e., that the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

invention is a *mechanism for clamping*.  *See Howmedica Osteonics Corp. v. Zimmer, Inc.*, 640 F. App'x 951, 956 (Fed. Cir. 2016) (citing *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)).  Moreover, contrary to Arkon's argument, it is well established that "the use of the indefinite article 'a' in the preamble followed by uses of the definite article 'the' in the body of the claims . . . is *not* dispositive of the issue of whether the preamble forms a structural limitation." *Ride & Show Eng'g, Inc. v. Walt Disney Parks & Resorts, L.L.C.*, No. 03-cv-6895-GAF (SHx), 2005 WL 6220490, at *10 (C.D. Cal. Sept. 22, 2005) (emphasis added).  Because claim 27 "can be read independently of the preamble[]," it does not limit the invention, and thus cannot be a basis for finding the claim invalid as indefinite.[3]  *Id.* (internal quotations omitted); *see also Unwired Planet LLC v. Google Inc.*, 111 F. Supp. 3d 1120, 1127-28 (D. Nev. 2015), *aff'd in relevant part*, 660 F. App'x 974, 985-86 (Fed. Cir. 2016) (no indefiniteness where the court concluded that the preamble was not a claim limitation).  Notably, Arkon did not seek a claim construction under which the preamble would be limiting, nor did the Washington Court construe it as such.  *See generally* Claim Const. Order.

Further, even if the preamble is limiting (it is not), Arkon still fails to establish that the claim is indefinite.  Arkon argues that the Washington Court "struggled to reconcile" the claim language, but that characterization does not square with the claim construction order.  *See* Mot. at 20.  The Washington Court wrote that for all claims, the "external member that the clamping mechanism is mounted to would be the frame member."  Claim Const. Order at 20 n.12.  Importantly, the portion of the claim construction order to which Arkon cites is *not*

---

[3] Arkon's two cited cases are not to the contrary.  Mot. at 20.  In *Intervet America, Inc. v. Kee-Vet Laboratories, Inc.*, the Federal Circuit merely recognized that whether a preamble is limiting must be judged on the facts of a particular case.  887 F.2d 1050, 1055 (Fed. Cir. 1989).  And in *Eaton Corp. v. Rockwell International Corp.*, the claims required "manipulation of particular structures that are identified and described only by the preamble."  323 F.3d 1332, 1340 (Fed. Cir. 2003).  Here, in contrast, the body of the claim describes the structurally complete invention.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

construing the preamble, but instead relates to a term in the body of the claim, "base portion [of the clamping mechanism]." *See* Mot. at 20.  The claim language leaves no doubt that the "clamping mechanism" in the preamble is not synonymous with the "clamping mechanism" in the claim body.  Nor is a claim indefinite where it is "readily apparent" that a term has different meanings, each based on its use in the context of the claims.  *See Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1376-77 (Fed. Cir. 2008).  Here, the respective meanings of "clamping mechanism" are abundantly clear:  the "clamping mechanism" of the preamble is defined by the limitations of the claim, and the "clamping mechanism" in the claim body is provided by the specification (and described in the claim construction order).[4]  *See* Claim Const. Order at 24.

In sum, Arkon cites no evidence establishing that claim 27 is indefinite, and its undeveloped attorney argument falls far short of its burden to prove indefiniteness by clear and convincing evidence.

### B.    The '212 Patent Claims are Not Invalid as Obvious.

Arkon's motion is its *third* attempt to argue that the '212 patent is invalid as obvious.  Just as its prior two attempts failed, so too does its request before this Court.  The PTAB found, twice, that Arkon failed to show even a "reasonable likelihood of success" on the merits of its obviousness defense.  Dkt. No. 170-8 (PTAB Institution Decision), Dkt. No. 170-9 (PTAB Denial of Reconsideration).  Arkon must now meet a much higher "clear and convincing evidence" standard to show obviousness, and it cannot do so.

"Obviousness is a question of law based on underlying questions of fact."

---

[4] Arkon does not argue that the "clamping mechanism" in the claim body is indefinite. *See* Mot. at 19-20.  Nor would such argument have any merit, as the meaning of "clamping mechanism" in the claim body is readily ascertainable with reasonable certainty.  Claim Const. Order at 33-34; *see also InfoGation Corp. v. ZTE Corp.*, No. 16-cv-01901-H-JLB, 2017 WL 1821402, at *13 (S.D. Cal. May 5, 2017) (no indefiniteness where antecedent basis can be ascertained with reasonable certainty from "review of the claim language and the specification").

*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1298 (Fed. Cir. 2010). The factual inquiries relevant to obviousness include "(1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *Id.* For summary judgment to be appropriate, Arkon must establish that these inquiries are not subject to disputes of material fact. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426-27 (2007).

As explained below, Arkon falls far short of establishing a prima facie case of obviousness and the absence of genuine issues of material fact. It fails to address the opinions of NPI's technical expert, and its characterizations of the evidence are replete with factual disputes that simply cannot be resolved on summary judgment.

### 1. Arkon Fails to Show That the Prior Art Satisfies the Claim Limitations.

Determining whether the invention is obvious requires "examin[ing] the prior art in question with respect to the individual elements and limitations purportedly disclosed therein." *See Audionics Sys., Inc. v. AAMP of Fla., Inc.*, No. 12-cv-10763-MMM (JEMx), 2015 WL 12712288, at *37 (C.D. Cal. July 10, 2015).

Here, Arkon does not meet its burden to show that each of the claim limitations is satisfied by the prior art. With respect to the CM228, Arkon fails to address how the reference allegedly satisfies any of the numerous claim limitations, including the first and second frame members, jaw portion that extends from an obtuse angle from the base portion, resilient compressible pad on the jaw portion, and the biasing member that biases the frame members together. *See* Mot. at 20-23. Similarly, for the Wang Patent, Arkon concludes, without any explanation or reference to its expert's testimony, that the claim limitations are met.[5] *See* Mot. at

---

[5] Arkon's argument regarding the Wang Patent also miscites the testimony of the '212 patent inventor, Jeffrey Carnevali ("Carnevali"). *See* Mot. at 21-22. Contrary to Arkon's assertions, Carnevali's testimony does not support that the jaw portion is inclined toward the *device mounting surface*, as required by the claims. *See* Dkt. No. 170-12 at 104:21-105:1; *see also* Resp. to Arkon's Statement of Fact No. 30.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  21-22.  Notably, for both references, Arkon does not address the very limitations on

2  which the PTAB based its decision to deny institution of *inter partes* review and

3  Arkon's subsequent request for reconsideration.  *See id.* at 20-23 (no discussion of

4  the "structured to cooperate" limitation or the "base portion including a structure

5  for mounting on an external member"); *see also* Dkt. No. 170-8 at 10-11; Dkt. No.

6  170-9 at 4.  Nor does Arkon address any of NPI's expert's opinions that several

7  limitations are missing from the Wang Patent and CM228, including the "resilient

8  compressible pad spaced away from and inclined toward the device mounting

9  surface," and the "biasing member . . . for biasing the first and second frame

10  members together."  Babcock Inv. Report at ¶¶ 99, 108-110, 119-120, 122-123,

11  139-141, 144, 148, 150, 163; *see generally id.* at ¶¶ 95-127, 138-155, 161-164.

12       Moreover, even though Arkon concedes that the Wang Patent and CM228

13  lack a "substantially rigid jaw portion extending at an obtuse angle from a base

14  portion,"[6] Arkon does not identify *any* base portion or jaw portion in its various

15  obviousness references.  Mot. at 23-24.  It also does not explain how it measures

16  the claimed "obtuse" angle between the base portion and jaw portion to meet the

17  claim requirements.  *Id.*  And it does not address NPI's expert's opinions showing

18  that the various references do not in fact disclose the claimed "jaw portion," which

19  must "engage an accessory device," be "substantially rigid," comprise a jaw portion

20  "pad," and extend at an "obtuse angle."  Babcock Inv. Report at ¶¶ 176-178

21  (MacKenzie), ¶ 187 (Rioux), ¶¶ 198-199 (Fan), ¶ 205 (Wisniewski), ¶¶ 212-214

22  (CN2344933), ¶¶ 225-226 (DE19719512), ¶ 242 (Panavise PortaGrip 2000).

23  Arkon's conclusory attorney argument is not evidence, fails to address NPI's expert

24  opinions, and does not establish entitlement to summary judgment.  *See Biotec*

25  _____

26  [6] In conceding that the Wang Patent and the CM228 do not anticipate, Arkon
suggests that the claims require that the arms be "vertically adjustable" or have

27  "different shapes."  *See* Mot. at 20, 22-24.  These are not requirements of the
claims.  *Supra* at 4.  Regardless, as discussed above, neither reference anticipates

28  the asserted claims because they lack disclosure of multiple claim limitations.

*Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1353 (Fed. Cir. 2001) ("It is well established that conclusory statements of counsel or a witness that a patent is invalid do not raise a genuine issue of fact.").

### 2.    Arkon Fails to Address Secondary Considerations.

In assessing obviousness, "a district court must *always* consider any objective evidence of nonobviousness." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010).  This is particularly critical where, as here, a party argues that the invention is merely a combination of "commonly known elements" that would be "routine" to combine. Mot. at 20-21; *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012) (objective considerations "ward against falling into the forbidden use of hindsight," especially "where the invention is less technologically complex").

Neither Arkon's motion nor its expert report addresses any evidence relating to the secondary considerations of non-obviousness.  *See generally* Mot. at 20-24; Dkt. No. 173-2.  NPI's expert, on the other hand, described numerous secondary considerations showing that the invention is not obvious, including the long-felt need for a secure way to hold portable devices; the failure of the prior art to satisfy that need; teaching away by the prior art; copying of the patented technology by a significant portion of the industry; and commercial success of practicing products. Babcock Inv. Report at ¶¶ 273-281.  Because Arkon neglects to address these considerations, it cannot establish the absence of any dispute of material fact, let alone carry its burden of proving obviousness by clear and convincing evidence. *See Mintz*, 679 F.3d at 1379-80 (vacating summary judgment of obviousness for, *inter alia*, failure to consider secondary considerations).

### 3.    Arkon Fails to Establish the References as Prior Art.

Arkon also fails to prove that its references are prior art.  *See* Mot. at 20-24. For example, Arkon provides no evidence showing that the Panavise PortaGrip 2000 or the untranslated CN2344933 reference were available prior to the '212

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

patent priority date.[7]  *See* Babcock Inv. Rep., ¶ 73 (examining evidence of conception).  Further, with respect to the CM228, Arkon admits that the version of the product on which its expert, Gregory Bryant ("Bryant"), opined is *not* the version that it now states was available as of August 17, 2000.  *See* Dkt. No. 172 at ¶¶ 35-36.  Rather, the CM228 subject of Bryant's opinions is—as Arkon admits—a "slightly later version," and Arkon's CEO could not definitively say this "later version" was on sale prior to the '212 patent priority date.  *Id*.  Because Arkon has failed to prove the references are prior art, summary judgment of obviousness is improper.  *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004) (vacating summary judgment of obviousness, finding that genuine issues of fact existed as to whether alleged reference was "prior art").

### 4.   Arkon Fails to Establish a Motivation to Combine the Wang Patent or CM228 with the Identified References.

Arkon does not provide a valid motivation to combine either the Wang Patent or CM228 with *any* of the various other references.  This failure is fatal to its motion, as "the relevant inquiry is whether there is a reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success." *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed. Cir. 1999); *see also Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013) (must determine "whether there was motivation to combine teachings from separate references" (citations omitted)).  Whether a motivation to combine exists is a question of fact.  *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000).

Arkon's only argument is that U.S. Patent No. 5,788,202 ("Richter")

---

[7] Arkon's allegation in a footnote that the "Panavise Cradle is also shown in NPI's 2001 catalog" is baseless.  *See* Mot. at 24 n.10.  It cites no evidence to support its empty allegation, and there is none.  Further, a "2001" date is insufficient to prove that the reference predates the '212 patent's priority date.  Babcock Inv. Rep., ¶ 73.

provides the required motivation to combine.  But the language in Richter to which it cites—that "the inside walls may be adapted in shape to any particular object to be held"—does not suggest the claimed invention.  As Arkon's expert agreed, the '212 patent is directed to a platform that universally holds devices of various sizes. *See* '212 patent at 1:5-10, 21-25; *see also* McMichael Decl., Ex. 3 (Bryant Dep. Tr.) at 213:11-22 (agreeing that the '212 patent is not directed to creating arms to match particular devices).  The '212 patent accomplishes this universality through the biasing mechanism combined with arms that are inclined toward the device mounting surface, such that they apply an inward and downward force to hold the device in a secure fashion.  '212 patent at 1:37-42; Babcock Inv. Rep., ¶¶ 270, 273.

In contrast, at most, Richter teaches a solution in which the arms are "adapted in shape to any particular object"—that is, customized for, and designed to match the shape of, the object being held.  *See* McMichael Decl., Ex. 3 (Bryant Dep. Tr.) at 220:13-20 (Arkon's expert agreeing that the Richter arms are shaped to match the shape of the device being mounted).  In context, Richter explains an example with arms that have "circularly curved inner surfaces suitable for retaining cans"—i.e., like a cupholder in a car shaped to hold cups and bottles.  *See* Dkt. No. 170-22 at 3:27-32.  This type of device is readily distinguishable from the invention of the '212 patent, which is designed for universal mounting.  Babcock Inv. Rep., ¶ 269.  Richter further confirms that the "clamping walls extend[] ***vertically*** from the base portion of the clamping wall structures"—not at the obtuse angle required by the '212 patent.  *See* Dkt. No. 170-22 at 3:23-24 (emphasis added).  Notably, Richter does not disclose the claimed obtuse jaw portion or otherwise teach inclined arms for universally holding devices.  And Arkon admits this, as it does not rely upon Richter for its disclosure of these claim limitations.

Finally, Richter also teaches away from the claimed invention, thereby legally precluding it from providing the required motivation to combine.  *In re Chapman*, 595 F.3d 1330, 1337 (Fed. Cir. 2010) ("A finding that a reference

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

teaches away can preclude a finding that the reference renders a claim obvious."); *Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999) ("There is no suggestion to combine, however, if a reference teaches away from its combination with another source."); *RPost Holdings, Inc. v. Trustifi Corp.*, No. 10-cv-1416-PSG (SHx), 2011 WL 13175664, at *9 (C.D. Cal. Dec. 27, 2011) (person of skill in the art would have not been motivated to combine references that teach away from the invention). As explained by NPI's expert, Babcock, Richter teaches away from the inward biasing mechanism claimed in the '212 patent, because it discusses the "advantage[s]" of the ratchet mechanism over the '212 patent. *See* Babcock Inv. Rep., ¶ 281. Further, the notion of "modifying the shape of clamping arms such that they match the object to be held," as provided in Richter, is "fundamentally different from the invention of the '212 patent," and "would result in a different device than what is claimed." *Id.* ¶ 269. Given these teachings, a person of ordinary skill in the art would have been diverted from combining the Wang Patent or CM228 with the allegedly obtuse arms of Arkon's various obviousness references.

### 5.   At a Minimum, Genuine Issues of Material Fact Preclude Summary Judgment.

Setting aside Arkon's failure to make a prima facie case of obviousness, Arkon's motion only underscores that there are numerous issues of material fact that preclude summary judgment. Arkon entirely fails to address the opinions of NPI's expert witness, Babcock. Specifically, Arkon does not address Babcock's opinions that (1) the Wang Patent and CM228 do not disclose the claim limitations (Babcock Inv. Report, ¶¶ 95-155); (2) the alleged combination references do not disclose what is admittedly missing from the Wang Patent and CM228 (*id.* ¶¶ 167-265); (3) secondary considerations of non-obviousness show that the invention is *not* obvious (*id.* ¶¶ 273-281); (4) the CM228 and Panavise PortaGrip are not prior art (*id.* ¶¶ 135-137, 237-238); and (5) there is no motivation to combine, including

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

from Richter, which teaches away from the claimed invention (*id.* ¶¶ 263-270, 281).

Tellingly, Arkon's "Statement of Uncontroverted Facts" does not contain a single allegedly uncontroverted fact in support of its obviousness arguments.[8]  *See* Dkt. No. 171.  This implicit admission that the facts underlying obviousness are not "uncontroverted" precludes summary judgment.  *See Audionics*, 2015 WL 12712288, at *46 ("triable issues of fact" warrant denial of summary judgment).

Summary judgment is appropriate only if the record "could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Here, given the gaps in Arkon's prima facie case, and its failure to address NPI's evidence, the record would leave a rational jury unable to find in Arkon's favor.  Summary judgment should be denied.

## IV.   ARKON IS NOT ENTITLED TO SUMMARY JUDGMENT OF NO PRE-FILING DAMAGES

NPI complied with the patent marking statute, 35 U.S.C. § 287(a), and is therefore entitled to seek damages for Arkon's infringement prior to the filing of this case.  Where a patentee marks its practicing products—by placing the "word 'patent' . . . together with an address of a posting on the Internet . . . that associates the patented article with the number of the patent"—the patentee has provided constructive notice to the public that the product in question is patented and cannot be copied without risk of liability.  35 U.S.C. § 287(a).  "The marking statute serves three related purposes: 1) helping to avoid innocent infringement; 2) encouraging patentees to give notice to the public that the article is patented; and 3) aiding the public to identify whether an article is patented."  *Nike, Inc. v. Wal-Mart Stores,*

---

[8] While Arkon cites case law in its discussion of legal standards suggesting that "common sense" may render a patent obvious (Mot. at 5-6), Arkon makes no argument to this effect.  *Id.* at 20-24.  Moreover, the *Mintz* case to which Arkon cites only confirms that summary judgment is not warranted.  679 F.3d at 1377 ("[M]ere recitation of the words 'common sense' without any support adds nothing to the obviousness equation.").  Whether an invention is "common sense" is a question of fact.  *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1354-55, 1357 (Fed. Cir. 2013).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    *Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998) (internal citations omitted).

2         Here, it is undisputed that NPI sells products that practice the '212 patent.

3    Mot. at 25; Babcock Inf. Rep., ¶¶ 31-32.  This includes,

4    for example, the Tough Tray product, pictured at right.

5    McMichael Decl., Ex. 7.  It is also undisputed that NPI



6    undertakes significant efforts to mark those products to

7    make abundantly clear that they are patented.

8    Specifically, each of the products includes the word

9    "PATENTED" and the URL of NPI's website, www.ram-mount.com.  Mot. at 25.

10   These markings—the same markings required by the statute—leave no doubt in

11   consumers' minds that (1) the product is protected by a patent, and (2) additional

12   information may be found at NPI's website.  As

13   Arkon acknowledges, that website includes a

14   prominent "Patents and Trademarks" page listing

15   NPI's issued patents, including the '212 patent.  Dkt.

16   No. 170-24.  Finally, if there remained any doubt, a



17   consumer interested in identifying particular patents

18   could easily access the listed patents which are widely

19   available on the Internet.  Upon viewing the '212

20   patent, the consumer would immediately recognize the

21   marked product (e.g., Tough Tray) that led them to the

22   website in the first place.  NPI has therefore complied with

23   both the text and the purposes of Section 287 to "give notice to the public that the

24   article is patented" and to "avoid innocent infringement."  *Nike*, 138 F.3d at 1443.

25        In the face of this evidence, Arkon's request for summary judgment should

26   be denied.  Arkon's only argument is that NPI's efforts fail to sufficiently

27   "associate[] the patented article with the number of the patent."  Mot. at 25.  This

28   argument is incorrect for multiple reasons.  First, as Arkon concedes, compliance

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

with the marking statute is a question of fact. Mot. at 25 (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098 (Fed. Cir. 1996)). A reasonable jury is more than capable of determining whether NPI's marking efforts are sufficient to provide notice of its patent and to avoid innocent infringement. *See Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 15-cv-02812-ODW (CWx), 2016 WL 10586287, at *2 (C.D. Cal. Dec. 15, 2016) (denying summary judgment where there were "clearly disputed facts" regarding marking); *Munchkin, Inc. v. Luv N' Care, Ltd.*, No. 13-cv-07228-ODW (AGRx), 2015 WL 847391, at *3 (C.D. Cal. Feb. 26, 2015) (denying motion *in limine*, as "any deficiency in marking can be weighed by the jury to determine the appropriate damages amount"). Indeed, even to the extent Arkon disagrees with the sufficiency of NPI's marking, it cites *no evidence* that a consumer would not find the patent and the covered products sufficiently "associated." *See* Mot. at 25.

Second, Arkon does not cite any authority finding NPI's marking efforts insufficient, least of all on summary judgment. It does not cite any case finding insufficient constructive notice where, as here, a product is marked with the word "PATENTED" and the URL of a website that includes the patent. It also does not cite any cases showing that because a website "lists over a hundred patents," a consumer may simply disregard the cautionary word "PATENTED" on the product.[9] On the contrary, courts have noted the Supreme Court's "long-standing focus on the *notice effected* by the method of marking the patented article rather than on the precise mechanistic compliance with the statute." *Rutherford v. Trim–Tex, Inc.*, 803 F. Supp. 158, 161 (N.D. Ill. 1992) (emphasis added); *see also Glob. Traffic Techs., LLC v. Emtrac Sys., Inc.*, 946 F. Supp. 2d 884, 907 (D. Minn. 2013) (denying summary judgment because "[w]hether marking on the packaging served as the most effective notice to the public of this product . . . is a fact issue for

---

[9] Arkon's capture of the Patents and Trademarks page lists 116 patents. Dkt. No. 170-24. Even assuming a consumer spent 15 seconds per patent to view the abstract and figures, reviewing *all* of the patents would take less than half an hour.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  trial"); *Stryker Corp. v. Zimmer Inc.*, No. 10-cv-1223, 2012 WL 6821683, at *3

2  (W.D. Mich. Nov. 29, 2012), *aff'd*, 837 F.3d 1268 (Fed. Cir. 2016) (denying

3  summary judgment where marking method left "a question about which reasonable

4  factfinders can differ"). Arkon thus fails to show that NPI is barred from seeking

5  damages for pre-suit infringement. At the very least, fact questions remain as to

6  whether NPI's marking provides constructive notice of its patent rights.

## V.   THE COURT SHOULD STRIKE THE IMPROPER PORTIONS OF THE DECLARATION OF PAUL BRASSARD

8          In attempt to remedy the shortcomings of its expert reports, Arkon submits a

9  declaration by its President, Paul Brassard, on the issues of patent infringement and

10  validity. *See* Dkt. No. 172 ("Brassard Decl."). Brassard was never disclosed or

11  qualified as an expert, and his statements regarding those issues are impermissible

12  lay opinion testimony not based on personal knowledge. They should be stricken.

13          The Federal Rules prohibit non-expert, lay witness testimony that is "based

14  on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c)

15  (requiring personal knowledge); *see also* Fed. R. Civ. P. 56 (declarations must "set

16  out facts that would be admissible in evidence"). As such, courts routinely find that

17  lay witnesses may not testify as to their understanding or review of a patent or their

18  opinions of the prior art. *See, e.g.*, *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410

19  F.3d 701, 714 (Fed. Cir. 2005) (affirming exclusion of lay witness testimony

20  regarding "structural components of the accused device and to their respective

21  functions" because "testimony amounted to improper expert testimony"); *Gart v.

22  Logitech, Inc.*, 254 F. Supp. 2d 1119, 1123 (C.D. Cal. 2003) ("[W]hen the

23  declarants compare the [prior art] to the [ ] Patent [at issue], they provide testimony

24  that does require specialized knowledge. This they are not permitted to do as lay

25  witnesses."); *Jarrow Formulas, Inc. v. Now Health Grp., Inc.*, No. 10-cv-8301-

26  PSG-JC, Dkt. No. 156 at 22 (C.D. Cal. Aug. 2, 2012) (striking improper opinions in

27  declaration of witness not disclosed as an expert).

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Here, Brassard offers a number of improper opinions regarding non-infringement and invalidity—issues that require "specialized knowledge." Fed. R. Evid. 701(c). Brassard describes the accused products and alleged prior art in relation to the '212 patent, indeed explicitly reciting claim limitations including "clamping mechanism," "frame members," "device mounting surface," "jaw portion," and "base portion." Brassard Decl., ¶¶ 18-19, 22, 25-27, 31-33, 35. He also makes broad assertions regarding the state of the art and level of ordinary skill. *Id.* ¶¶ 6, 7. And he prefaces his opinions by clarifying that they are "[p]er my reading of the patent and understanding of the technology at issue"—statements which are particularly improper given Brassard's lack of personal knowledge about the substance of the patent and claim construction order. McMichael Decl., Ex. 4 (Brassard 9/7/2018 Dep. Tr.) at 27:10-24, 28:2-11, 70:20-71:13; McMichael Decl., Ex. 5 (Brassard 1/30/2018 Dep. Tr.) at 150:1-19. It is not Brassard's "reading of the patent" that is at issue here. As recognized by NPI's expert, Babcock, it is the Court's definitions of claim terms that must be used.

The sole purpose of Brassard's declaration is to bolster Arkon's inadequate expert opinions. Indeed, Arkon's "Statement of Uncontroverted Facts" contains several facts allegedly supporting Arkon's non-infringement and invalidity theories, which depend solely on Brassard's testimony. Dkt. No. 171 at Nos. 13, 19, 21, 22, 24, 27, 29. Because Brassard's statements constitute improper lay opinion testimony not based on personal knowledge, the Court should strike them. Brassard Decl., ¶¶ 6-7, 10-16, 18-22, 25-27, 31-33, 35.

## VI.   CONCLUSION

For the foregoing reasons, Arkon's motion should be denied, and the Court should strike the improper statements of Paul Brassard.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Dated:  November 27, 2018

Respectfully submitted,

FENWICK & WEST LLP

By: /s/*Jonathan T. McMichael*

Jonathan T. McMichael (CSB No. 304737)
David K. Tellekson (admitted *pro hac vice*)
Ewa M. Davison (admitted *pro hac vice*)
Jessica M. Kaempf (admitted *pro hac vice*)
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Tel:    206.389.4510
Fax:    206.389.4511
Email:  jmcmichael@fenwick.com
          dtellekson@fenwick.com
          edavison@fenwick.com
          jkaempf@fenwick.com

Attorneys for Plaintiff
NATIONAL PRODUCTS INC.